**Mabel FLINN, et al., Appellants,**

**v.**

**FMC CORPORATION and Local 9 Textile Workers Union of America, AFL–CIO, Appellees.**

**No. 74–2198.**

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1975.

Decided Oct. 6, 1975.

Certiorari Denied March 22, 1976.
See 96 S.Ct. 1462.

M. E. Mowery, Jr., Parkersburg, W. Va., for appellants.

Fred L. Davis, James R. Renfroe, Chicago, Ill. (Robert F. St. Aubin, Asst. Counsel, Philadelphia, Pa., McDougle, Davis, Handlan & Davis, Parkersburg, W. Va., on brief), for appellee FMC Corp.

Gregory Abbey, New York City, for appellee Local 9, Textile Workers Union of America, AFL–CIO

Before BOREMAN, Senior Circuit Judge, and RUSSELL and FIELD, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

 This is an appeal from an order of the District Court approving the settlement of a class action asserting a claim of sex discrimination under the provisions of Title VII. The scope of our review on such an appeal is narrow.[1] We are not, in reviewing the settlement, to "substitute our ideas of fairness for those of the district judge * * *."[2] Our power, as the appellants concede and the authorities abundantly affirm, is only to be exercised "upon a clear showing that the district court abused its discretion" in approving the settlement.[3] The most important factor to be considered in determining whether there has been such a clear abuse of discretion is whether the trial court gave proper consideration to the strength of the plaintiffs' claims on the merits, for, as the Court said in *City of Detroit v. Grinnell Corporation* (2d Cir. 1974) 495 F.2d 448, 455, "[I]f the settlement offer was grossly inadequate, * * * it can be inadequate only in light of the strength of the case presented by the plaintiffs." The trial court should not, however, turn the settlement hearing "into a trial or a rehearsal of the trial"[4] nor need it "reach any dispositive conclusions on the admit-

---

1. *Patterson v. Newspaper & Mail Del. U. of N. Y. & Vic.* (2d Cir. 1975) 514 F.2d 767, 771.

2. *Patterson v. Newspaper & Mail Del. U. of N. Y. & Vic., supra* (514 F.2d at 771); *State of West Virginia v. Chas. Pfizer & Co.* (2d Cir. 1971) 440 F.2d 1079, 1086, *cert. denied* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971).

3. *Grunin v. International House of Pancakes* (8th Cir. 1975) 513 F.2d 114, 123; *Greenspun v. Bogan* (1st Cir. 1974) 492 F.2d 375, 379; *State of West Virginia v. Chas. Pfizer & Co., supra* (440 F.2d at 1085, n. 1); *United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.* (7th Cir. 1971) 447 F.2d 647, 655; *Young v. Katz* (5th Cir. 1971) 447 F.2d 431, 433. In the latter case, the Court, quoting with approval from the District Court opinion in *Neuwirth v. Allen*, as affirmed in (2d Cir. 1964) 338 F.2d 2, said:

"'* * * The action of the District Court [in affirming the settlement] is presumptive-

ly right, and will not be set aside unless clearly shown to have been wrong. * *'"

4. *Teachers Ins. & Annuity Ass'n of America v. Beame* (S.D.N.Y.1975) 67 F.R.D. 30, 33; *Levin v. Mississippi River Corporation* (S.D.N.Y. 1973) 59 F.R.D. 353, 361, *aff'd sub nom. Wesson v. Levin*, 486 F.2d 1398, *cert. denied* 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973). In *Levin*, the Court said:

"* * * So, too, the Court is cautioned not to turn the settlement hearing into a trial or a rehearsal of a trial. To do so would defeat the very purpose of the compromise to avoid a determination of the sharply contested issues and to dispense with expensive and wasteful litigation. The Court's role is a more 'delicate one', which requires a balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable and adequate * * *."

tedly unsettled legal issues" in the case.[5] It is not part of its duty in approving a settlement to establish that "as a matter of legal certainty * * * the subject claim or counterclaim is or is not worthless or valuable."[6] It is not, though, to give to the settlement "mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law."[7] While it should extend to any objector to the settlement "leave to be heard, to examine witnesses and to submit evidence" on the fairness of the settlement, it is entirely in order for the trial court to limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision.[8] So long as the record before it is adequate to reach "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and "form an educated estimate of the complexity, expense and likely duration of such litigation, * * * and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise," it is sufficient.[9]

In reviewing the record and evaluating the strength of the case, the trial court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement, and the experience of counsel who may have represented the plaintiffs in the negotiation.[10] The fact that all discovery has been completed and the cause is ready for trial is important, since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case.[11] Collusion and bad faith on the part of those purporting to represent the class in the negotiations will, of course, impugn the settlement.[12] While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court,[13] such opinion should be given weight in evaluating the proposed settlement.[14] The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court,[15] though "a settlement is not unfair or unreasonable simply because a large number of class members oppose it."[16] And because the cash settlement "may only amount to a fraction of the potential recovery" will not *per se* render the

---

5. *State of West Virginia v. Chas. Pfizer & Co.,* supra (440 F.2d at 1086).

6. *Florida Trailer and Equipment Company v. Deal* (5th Cir. 1960) 284 F.2d 567, 571.

7. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson* (1968) 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1, *reh. denied* 391 U.S. 909, 88 S.Ct. 1649, 20 L.Ed.2d 425 (1968); *Newman v. Stein* (2d Cir. 1972) 464 F.2d 689, 692, *cert. denied* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972); *City of Detroit v. Grinnell Corporation,* supra (495 F.2d at 462).

8. *Glicken v. Bradford* (S.D.N.Y.1964) 35 F.R.D. 144, 148:
"* * * this is not a trial and the test of the evidence which the Court should receive on a settlement is whether the preferred proof is of a nature which will aid it in passing upon the essential fairness and equity of the settlement."

9. *See* authorities cited under Note 7.

10. *City of Detroit v. Grinnell Corporation,* supra (495 F.2d at 463).

11. *See United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.,* supra (447 F.2d at 655).

12. *Wainwright v. Kraftco Corporation* (N.D. Ga.1973) 58 F.R.D. 9, 11.

13. *Cohen v. Young* (6th Cir. 1942) 127 F.2d 721, 725, *cert. denied* 321 U.S. 778, 64 S.Ct. 619, 88 L.Ed. 1071 (1973). In this case, the trial court had refused to exercise its discretion on "the adequacy and fairness of the settlement upon the ground that it had no power to do so since the attorneys of record approved the compromise."

14. *Blank v. Talley Industries, Inc.* (S.D.N.Y. 1974) 64 F.R.D. 125, 132; *Helfand v. New America Fund, Inc.* (E.D.Pa.1974) 64 F.R.D. 86, 90; *Oppenlander v. Standard Oil Company* (D.Colo.1974) 64 F.R.D. 597, 624.

15. *Greenspun v. Bogan,* supra (492 F.2d at 379); *City of Detroit v. Grinnell Corporation,* supra (495 F.2d at 462); *Kurach v. Weissman* (S.D.N.Y.1970) 49 F.R.D. 304, 306.

16. *Bryan v. Pittsburgh Plate Glass Co.* (3d Cir. 1974) 494 F.2d 799, 803, *cert. denied* 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974).

settlement inadequate or unfair.[17] With particular reference to class actions under Title VII, any settlement should receive careful review because of the public policy embodied in such legislation, but the clearly expressed intent of that Act to encourage settlements must be borne in mind.[18]

Applying these principles to the settlement approved in this case, we find no abuse of discretion on the part of the trial court. The settlement as approved was not hastily arrived at. It followed protracted discussions and was reached on the eve of trial after prior negotiations had failed. The plaintiffs were represented in the negotiation by their retained counsel, who had had extensive experience in handling sex and racial discrimination cases. His good faith and competency are not challenged. A representative of the Equal Employment Opportunity Commission was present during the hearings on the settlement and presumably fully informed herself of the terms of the settlement and its fairness. In the class involved in the suit were 253 female employees of the defendant. All these employees were given a carefully drafted statement of the settlement, as well as provided adequate notice of the hearing thereon, and of their right to object thereto. Only five members of the class filed any dissent from the settlement. Three of these were the original plaintiffs in the class suit.[19] They appeared with new counsel, who had been retained to represent them in objecting to the settlement. They were given ample opportunity to present testimony and to be heard on the settlement. They alone appeal from the approval of the settlement.

The first objection of the appellants to the settlement was that the trial court, in approving the settlement, did so "simply because it was agreed upon by counsel for the respective parties." The record disproves any such contention. The trial court recognized and stated positively in the record that the mere fact that counsel "believe it is an honorable settlement" and one which "is in their considered judgment, the appropriate way to terminate the litigation," did not relieve the Court of its responsibility to "oversee, overview and to ultimately pass upon the question of whether the proposed settlement agreement meets the test, the criteria, the standards that are impressed upon the Court by Act of Congress." It later in its oral opinion approving the settlement emphasized anew the Court's responsibility in approving a settlement of a class action. It stated that "it is the sole responsibility of the Court * * * in approving or disapproving a settlement such as presented here."

The appellants go on to assert that, even if the trial court had recognized its responsibility in connection with the proposed settlement, it failed to have "a trial or hearing on the merits of the allegations raised in the employee's complaint." There is, as we have seen, no requirement for a trial on the merits as a prerequisite to approval of a settlement. All discovery had been completed in the case, which had been pending for several years in the court. Various motions had been heard, including one for summary judgment and another involving the designation of the suit as a class action. The trial court had considerable familiarity with the case and the respec-

---

17. *City of Detroit v. Grinnell Corporation, supra* (495 F.2d at 455).

18. *Patterson v. Newspaper & Mail Del. U. of N. Y. & Vic., supra* (514 F.2d at 771).

19. Appellants do not argue, nor may they under the authorities, that assent of the class plaintiffs is essential to the settlement, provided the trial court finds it fair and reasonable. The original plaintiffs, however, should be given the opportunity to retain new counsel to represent them in objecting to the settlement and to be heard in opposition. *See Saylor v. Lindsley* (2d Cir. 1972) 456 F.2d 896, 899–90, and *Ace Heating & Plumbing Company v. Crane Company* (3d Cir. 1971) 453 F.2d 30, 33–4. That right was accorded the appellants by the District Court in this case and the appellants exercised that right as evidenced by this appeal and the record in the court below.

tive positions of the parties. Further, it had extended to the appellants the right to present fully on the record their objections to the settlement. In their testimony, they gave the case the appearance more of a complaint about seniority and transfer rights under their collective bargaining agreement than about sex discrimination. Their real complaint related to the effect of such transfers, the propriety of which on technological grounds they did not dispute, on their seniority. The appellant Loiseau, for instance, stated her complaint arose out of a transfer made in 1958 from an incentive pay department to a straight hourly pay department and to the granting of priority in available incentive pay jobs to employees brought over from the discontinued plant of the appellee at Roanoke. However, the employees brought from Roanoke, who secured the job she wanted, were, she admitted, female, too. The appellant Flinn testified that her complaint arose out of a departmental transfer that took place in 1963. She claimed that an employee when transferred to another department was not allowed to carry her seniority with her, though she asserted this was contrary to the collective bargaining agreement.[20] It was conceded, however, that the seniority rules were negotiated between the employer and the Union and were "applicable to males and females alike." The appellant Lynn, according to her testimony, "had to transfer due to customer requirements and I had to transfer and lost half of my seniority." Her loss of seniority placed her behind other female employees in the department to which she transferred. In their complaint, the appellants seemed to base their claim of sex discrimination on the assertion that female employees were employed on an incentive pay basis, whereas male employees were on a straight hourly pay basis. As we have seen, however, the appellants, in their own statements of

their complaint, objected to be transferred from an incentive pay basis to a straight hourly pay basis, and the reason expressed for their discontent was that an employee earned more on an incentive pay basis than on a straight hourly pay basis. Moreover, no one of the appellants, though conceding that the settlement of transfer rights gave them the privilege of transferring to straight time, had claimed any such right. This reinforces the conclusion that the claim of the appellants related not so much to sex discrimination as to their right, when required to transfer, to transfer to an incentive pay job rather than to a straight hourly pay job.

The trial court, in its oral order approving the settlement, reviewed this testimony and other evidence in the record. Its review demonstrated its familiarity with the contentions of the parties and its careful evaluation of the merits of the appellants' claims. It recognized that there were two classes of female employees involved. The three objectors, as we have already observed, really were complaining about the seniority rules applicable in connection with departmental transfers, whether by males or females. These transfers antedated the enactment of Title VII. And the persons who secured priority in seniority over them on transfer were, it would seem, women. Whatever their complaint, they concede it has been satisfied "by virtue of the collective bargaining process." The trial court indicated the weakness it perceived in this claim of the appellants themselves. It took particular note of the possible untimeliness of the plaintiffs' claims and of the alleged bar of the statute of limitations. On the other hand, there were some female employees engaged in custodial work, whose pay was less than that of the male employees on the custodial force. Whether there was some bona

---

**20.** Her testimony on this point was that, under Section D of the collective bargaining agreement, "when the jobs are transferred to another department, the employees so affected would move with no loss of adjusted seniority." She complained to the Union on this but, according to her, the Union "refused" to do anything.

fide occupational justification for this difference and whether the male employees performed additional services were claims asserted in defense. Who would prevail in connection with these claims was, in the opinion of the Court, in doubt. In any event, the settlement on the merits has resolved this issue to the satisfaction of the employees concerned and no employee in this group has appealed from the approval of the settlement.

Actually, the appellants do not, it would seem, complain of the overall amount to be paid under the settlement. It is what they are individually to receive out of that settlement that prompts their objection and this appeal. The amount each employee, it is true, is receiving is not large. And an employee, who feels she was discriminated against in 1958 will naturally feel that she should receive considerably more than a fairly recent employee, even though her claim of unfairness occurred some six years before the enactment of the statute on which she bases her action. This feeling is no doubt increased by the consideration that the appellants were the ones who brought the action and had by their efforts made available the fund. It must be borne in mind, though, that the appellants chose to bring their action as a class action, over the objection of the appellee. In so doing, they disclaimed any right to a preferred position in the settlement. Moreover, despite the fact that their complaint relates to an act that occurred many years ago, it may well be, as the trial court observed, that their individual claims would be considerably weaker than others in the class, particularly those working on the custodial force. The trial court was entitled to consider, in evaluating the fairness of the cash settlement, that all complaints of unfairness, whether they related to seniority rights under the collective bargaining agreement or any form of discrimination, racial or sexual, had been satisfied and that settlement had been "approved by the Government." As the Court in *City of Detroit* said, "[A]ny claim by appellants that the settlement offer is grossly and unreasonably inadequate is belied by the fact that, [for] all appearances, the vast preponderance of the class members willingly approved the offer." [21] Under all these circumstances, we find no abuse of discretion on the part of the trial court in approving the settlement herein. The judgment of the District Court approving the settlement is accordingly affirmed.

*Affirmed.*