Kathryn A. BAILEY, et al.,
Plaintiffs–Appellants,

v.

GREAT LAKES CANNING, INC.
Defendant–Appellee.

No. 88–3711.

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 11, 1989.

Decided and Filed July 19, 1990.

Kathryn A. Bailey, Twinsburg, Ohio, pro se.

Barbara Fakhir, Twinsburg, Ohio, pro se.

Steiffudden Rasheed Fakhir, Twinsburg, Ohio, pro se.

Judith P. Vance, Twinsburg, Ohio, pro se.

Kenneth Montlack, Cleveland Heights, Ohio, for Cecilia Curry, Melvenia Rogers.

James D. Kurek, Edward C. Kaminski, Buckingham, Doolittle & Burroughs, Akron, Ohio, for defendant-appellee.

Before: JONES and NORRIS, Circuit Judges; ENGEL, Senior Circuit Judge.*

PER CURIAM.

Four of six named black plaintiffs appeal *pro se* from the apportionment of a $700,-000.00 settlement approved by the district court in this employment discrimination class action. Because we conclude that the terms of the contested consent decree are just and equitable for all class members, we affirm the district court's approval of the settlement.

I.

On November 22, 1985, Kenneth Montlack, counsel for plaintiffs, Kathryn Bailey, Cecilia Curry, Barbara Fakhir, Seifudden–Rasheed Fakhir, Melvenia Rogers, and Judith Vance, filed a class-action complaint against Great Lakes Canning, Inc. ("GLC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

On April 28, 1986, appellants were certified as representatives of a class of black applicants who had sought, were seeking, or in the future would seek employment with GLC. At that time, counsel had identified an initial class member list of approximately eleven persons.

The district court bifurcated the liability and damages portions of the case. Prior to the trial of the liability issues, the case was consolidated with another case brought by Cecilia Curry and Melvenia Rogers against GLC, in which they were represented by attorneys Diane Newman and Richard Sternberg. Newman and Sternberg agreed that Montlack would be the lead counsel in the consolidated cases.

On September 16, 1987, after extensive hearings and briefings, the district court entered a Memorandum Opinion and Judgment for the plaintiffs, finding that GLC had violated both Title VII and § 1981 by engaging in a pattern and practice of discrimination in hiring during the years 1983 through 1985.

The pattern and practice of discrimination in hiring was established by statistical evidence which demonstrated that out of 149 persons hired by GLC during the relevant period, only eleven persons (7.4%) were black, whereas black representation within the relevant three-county area was 10.8%. The evidence also showed that: GLC's hiring practices were vague and subjective; it continually provided incomplete, inaccurate, and inconsistent information to

* Honorable Albert J. Engel assumed senior status on October 1, 1989.

job applicants; it kept inadequate records of its hiring decisions; its hiring standards were lax and unprofessional and it often disregarded them; its records identified applicants by race; it hired friends and relatives referred by the predominantly white work-force; it had hired white applicants over better qualified black applicants; and at times it had hired from the exclusively white pool of referrals from the Teamsters Union Local. Finally, the evidence demonstrated a "subclass" of black persons who had unsuccessfully applied for employment at GLC between January 1, 1983 and December 1985. Forty-five of the subclass members (*not including the appellants*) were apparently better qualified than the white applicants hired to fill the positions for which they applied.

The court denied GLC's subsequent motion to certify the September judgment for interlocutory appeal, and counsel and the district court began preparing for the remedy phase of the case. They engaged in numerous discussions concerning settlement.

Appellants contend that on November 13, 1987, Montlack told them that they had won the $5.5 million sued for and that he would be consulting with GLC lawyers on the following November 16. They charge that he had not kept them advised of the proceedings and that thereafter he refused to discuss the case with them. However, the court's findings indicate that Montlack had fully advised the appellants of the nature of a class action prior to the filing of the suit, that he had kept them advised of the proceedings, and that he met with them in February of 1988 to discuss the pending negotiations. The court further found that on April 11, 1988, counsel and GLC had reached an agreement with respect to job goals and the amount of an award ($700,-000.00); and thereafter Montlack discussed this agreement with the appellants. Further, when Montlack learned on February 9, 1988, that appellants had hired a new attorney, Sam Perry, Montlack encouraged Perry to participate in the pending settlement negotiations and kept him advised of subsequent developments.

On May 9, 1988, a proposed consent decree was submitted to the court. The court entered a preliminary approval of the decree on May 11, 1988. Notice of the proposed settlement was then given to identified class members by mail and to unknown members by newspaper publication.

Curry and Rogers, the other two named plaintiffs, discharged Newman and Sternberg as counsel and joined with the four appellants in filing both individual and collective objections to the proposed decree through new counsel, Sanford J. Berger and Robert M. Bertel.

A status conference was held by the court on June 24, 1988.[1] Counsel and the named plaintiffs were present. At that time, the court advised all parties that they would have an opportunity to testify regarding their objections to the proposed decree at a fairness hearing scheduled for July 5, 1988. The four appellants, Bailey, Barbara and Steifudden Rasheed Fakhir and Vance, did not appear at the hearing. Nevertheless, the court permitted them to submit affidavits, which were filed on July 8, 1988. The other two named plaintiffs, Curry and Rogers, appeared and testified against approval of the settlement. Only 19 of the 152 class members raised objections to the settlement. The only substantial objections were based upon the lack of job guarantees, the failure to notify them of the liability trial, and unhappiness with the money distribution.

On July 22, 1988, the district court issued a Memorandum Opinion and Order approving the consent decree. The opinion carefully reviewed the relevant evidence, particularly the attorney fees, and rejected the objections of the named plaintiffs and the class members.

On this appeal, the four appellants object only to the apportionment of the monetary

---

1. The court strictly observed the substantive and procedural requirements set forth in *Williams v.*

*Vukovich,* 720 F.2d 909, 920–24 (6th Cir.1983).

amount of the settlement.[2] In furtherance of this objection, the appellants also argue that the Title VII statute of limitations limited the members of the class and that the award of attorney fees is unreasonable.

The consent decree provided for *monetary relief* in a total amount of $700,000.00 to be distributed as follows (J.App. § E at 16–18):

(1) $70,000.00 to be distributed on a *pro rata* basis, as compensatory damages under § 1981, to the six named plaintiffs. In addition, they will receive a *pro rata* share of the damages payable to subclass members.

(2) $360,000.00 to be distributed, as backpay under Title VII, on a *pro rata* basis without preference to *subclass* members who hereafter establish their claims in accordance with the procedures outlined in the decree. (The potential subclass now includes *157 persons*.)

(3) $270,000.00 for payment of attorney fees and reimbursement of the costs and expenses incurred by class counsel (apparently considered by Montlack as intended to include future fees and expenses as well as those incurred to date). The court approved Montlack's application showing that he had expended almost 1600 hours in the preparation and trial of the case. Accordingly, it allowed him $200,000.00 in attorney fees, based upon an hourly rate of $125. It noted that, to date, he had out-of-pocket expenses totaling $15,094.51, and allowed him $20,000.00 for reimbursement of expenses. It also allowed $50,000.00 in attorney fees to Newman and Sternberg, based upon an hourly rate of $100.

Montlack's rationale in accepting the $360,000.00 settlement covering class members was that, absent unlawful discrimination, perhaps 31 (20.8%), rather than 11, of the 149 identified persons hired by GLC during 1983 through 1985, would have been black. Because GLC hired only 11 black employees, approximately twenty others were discriminated against in the hiring process. Accordingly, the maximum potential gross amount of any backpay award to a class (including all lost earnings, benefits, and interest for a period of as much as four years, nine months) would not exceed $1,384,000.00. He balanced this against the possibility of a one-year backpay award and the risks involved in further proceedings and appeals. Further, that gross amount would be reduced by seasonal layoffs and other job terminations, plaintiffs' actual interim earnings, and amounts they might reasonably have earned during the period. Accordingly, Montlack determined that it was reasonable to conclude that, if the 20 shortfall applicants could have been determined, they each would have received an award of $18,000.00. Montlack considered it advisable to distribute the $360,000.00 settlement equally among the 157 members of the class (amounting to approximately $3,000.00 each).

Montlack allocated $10,000.00 to each named plaintiff as compensation for emotional trauma and $1,667.00 to each as compensation for their legal efforts and assistance rendered to counsel. There was no evidence that, except for unlawful discrimination, the named plaintiffs would have secured employment at GLC.

---

**2.** The equitable provisions of the consent decree are not at issue, but are relevant as indicating the reasonableness of the time expended by counsel.

The agreement designated the Ohio Civil Rights Commission to monitor the administration of the decree through compliance officers designated by the Commission and by GLC. J.App. § E at 5, 10, 20–22. GLC was specifically mandated to hire employees without regard to race and prohibited from engaging in specified discriminatory activities. *Id.* at 6–7. GLC was required to mail a letter to all class members, inviting them to re-apply for employment. An opportunity was provided for them to obtain preferential hiring status. *Id.* at 7.

GLC was required to use the Ohio Bureau of Employment Services and the Twinsburg Heights Community Center in future hirings and to discontinue using Teamsters Local No. 293 as a source for direct referrals. *Id.* at 10–11. A comprehensive application and selection procedure was established for the selection of applicants for employment. *Id.* at 11–14.

Finally, GLC was required to adopt an affirmative action program to achieve and maintain a goal of 19% minority employment in production jobs and 15% minority employment in clerical jobs. J.App. § G at 14–15.

## II.

■ A class action may not be compromised without the approval of the court. Fed.R.Civ.P. 23(e). The district court may not approve a settlement unless it determines after hearings that the settlement is fair, adequate, and reasonable, as well as consistent with the public interest. *United States v. Jones & Laughlin Steel Corp.,* 804 F.2d 348, 351 (6th Cir.1986); *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983). An approved settlement will not be upset unless the district court has abused its discretion. *Jones & Laughlin,* 804 F.2d at 351; *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir.), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

### A.

■ Based on the evidence developed at trial, it is doubtful whether any of the four appellants would have been entitled to recover backpay under Title VII. They did not establish that they were not better qualified than the white persons hired for the jobs. Compensatory or punitive damages may not be recovered under Title VII, but may be recovered under a § 1981 action joined with a Title VII action. *Boddy v. Dean,* 821 F.2d 346, 352 (6th Cir.1987); *Johnson v. Railway Express Agency,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). Accordingly, it was appropriate to calculate a compromise figure reflecting the uncertainty of the appellants' being able to recover compensatory or punitive damages in the § 1981 action.

The trial court correctly found that the appellants had been adequately advised from the beginning as to the possible consequences of a class action. In bringing the class action, "they disclaimed any right to a preferred position in the settlement," and their individual claims were weaker than some of the others in the subclass. *See Flinn v. FMC Corp.,* 528 F.2d 1169, 1176 (4th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). "The court should insure that the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members." *Williams v. Vukovich,* 720 F.2d at 923. The trial court found that the total settlement was the result of "counsels' efforts in evaluating the total possible recovery versus the uncertainty of an appellate review and the early resolution of this litigation." J.App. § C at 24. It conformed to the requirement that it weigh "the plaintiffs' likelihood of success on the merits against the amount and form of the relief offered in the settlement," and it could not have withheld its "approval simply because the benefits accrued from the decree were not what a successful plaintiff would have received in a fully litigated case." *Williams,* 720 F.2d at 922. Accordingly, we affirm the district court's disposition of the appellants' objection that the settlement was unfairly distributed.

### B.

■ The appellants also contend that the Title VII statute of limitations capped the potential members of the class. As noted by the trial court, this issue was briefed both at the class certification stage and at the fairness hearing. The court expressed the belief that the real basis for the appellants' objection was that they did not wish any other members of the class to share in the award.

■ We agree that the appellants' contention is without merit because "backpay may be awarded on a class basis under Title VII without exhaustion of administrative remedies by the unnamed class members." *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975). Generally, certification of a class action tolls limitation periods applicable to the class.

It would have been virtually impossible for the court to determine which individuals would have been hired but for the discrimination. Therefore, we find that *pro rata* distribution of the award among the class was the fairer method. It is the best that could be done under the circumstances, even though it obviously may have generated a windfall for persons who would never have been hired and undercompensated the genuine victims of discrimination. *Stewart v. General Motors Corp.,* 542 F.2d

445, 452–53 (7th Cir.1976), *cert. denied,* 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977); *Pettaway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 260–62 (5th Cir. 1974).

Additionally, appellants' objection that certain potential members did not seek employment with GLC during the relevant period is premature. All claimants must establish that they are proper members of the class in accordance with procedures established by the consent decree. J.App. § E at 19–20.

### C.

Finally, the appellants contend that the award of attorney fees is unreasonable. Reasonable attorney fees may, in the discretion of the court, be awarded to a prevailing private party in a Title VII civil action as provided in 42 U.S.C. § 2000e–5(k) and to a prevailing private party in a § 1981 action as provided in 42 U.S.C. § 1988. It was appropriate for the district court to use the lodestar method of calculating the attorney fees by multiplying the hours reasonably expended by a reasonable hourly rate, there being no other relevant factors requiring further modification. It was also appropriate to reimburse counsel for amounts reasonably expended. *North-cross v. Board of Education of the Memphis City Schools,* 611 F.2d 624, 632–43 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Coulter v. Tennessee,* 805 F.2d 146, 148–51 (6th Cir.1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987).

It is apparent from the court's opinion that the counsel's supporting documentation was both complete and reasonable. Further, the court specifically noted the complexity and difficulty of the issues and the highly competent performance of counsel. J.App. § C at 22–23.

### III.

For the above reasons, the judgment of the district court is AFFIRMED.