REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2620

September Term, 2014

_____

ROBERT SHENKER, ET AL.

v.

BERNICE POLAGE, ET AL.

_____

Wright,
Nazarian,
Hotten,*

JJ.

_____

Opinion by Nazarian, J.
_____

Filed: February 1, 2016

*Michele D. Hotten, J., participated in the
hearing of this appeal while still an active
member of this Court but did not
participate in either the preparation or
adoption of this opinion.

This appeal arises from the Circuit Court for Baltimore City's approval of a class action settlement of claims against Cole Real Estate Investments, Inc. ("CREI"), American Realty Capital Properties, Inc. ("ARCP"), and both companies' directors and officers, relating to their February 2014 merger. Certain CREI shareholders brought derivative and class action claims alleging that the CREI board breached its fiduciary duties in negotiating and completing due diligence for the merger. The parties reached a settlement that the circuit court approved preliminarily, but before the circuit court conducted its settlement approval hearing, ARCP announced that certain financial results had been misstated and that others were not (yet) reliable. After further negotiations, the parties agreed to an amended settlement that, among other things, released CREI's officers and directors from future liability, but carved the officers and directors of ARCP out of the release. Five class members, including Robert Shenker, objected to the amended settlement, arguing that the release was overbroad because it precluded the objecting shareholders from bringing federal securities claims against CREI's officers and directors. The circuit court held a hearing and approved the amended settlement. Mr. Shenker appeals and we affirm.

## I.     BACKGROUND

CREI is incorporated in Maryland and maintains its principal executive offices in Phoenix, Arizona. CREI was previously known as Cole Credit Property Trust III ("CCPT III") and operated as a non-traded real estate investment trust that acquired commercial retail properties throughout the country. Christopher H. Cole is chairman of CREI and was

CEO of CCPT III until the first merger (which we describe in greater detail below) in April 2013. Mark Nemer became CEO and President of CREI after the first merger.

ARCP is a Maryland corporation that maintains its principal offices in New York City. It became a public company in September 2011. ARCP acquires and owns single-tenant freestanding commercial real estate, principally subject to medium-term net leases.

### A. The First Merger: CCPT III Acquires Its Subsidiary.

In early 2013, ARCP approached CCPT III with a proposal to merge, but a special committee of CCPT III's board decided not to pursue a merger with ARCP at that time. Instead, on March 6, 2013, CCPT III announced that its board had unanimously approved the acquisition of one of CCPT III's subsidiaries, Cole Holdings Corporation. The combined company would be called CREI. As consideration for the acquisition, CCPT III would make upfront payments of $20 million in cash, subject to adjustment, as well as 10,711,225 shares of CCPT III common stock, plus 2,142,245 shares of common stock after listing on the New York Stock Exchange. Additional shares of common stock were potentially payable in 2017 as an earn-out, contingent on the new company's financial success.

During March 2013, CCPT III shareholders filed, in the Circuit Court for Baltimore City, three separate putative derivative and class action lawsuits challenging the proposed acquisition. These suits were ultimately consolidated; two federal securities claims were filed as well in the United States District Court for the District of Arizona. Opposing shareholder Bernice Polage also served what came to be known as "The Polage Demand"

2

on CCPT III's board in April 2013. She alleged that CCPT III directors breached their fiduciary duties to shareholders by pursuing the internalization merger rather than merging with ARCP. CCPT III's board formed a special committee to investigate these allegations, as well as the opposing shareholders' demands: disgorgement of the cash and shares that Defendant CEO Mr. Cole received in connection with the transaction; rescission of Mr. Cole and Mr. Nemer's employment agreements entered into in connection with the transaction, and damages to compensate shareholders for losses sustained as a result of the transaction.

The acquisition ultimately closed in April 2013, and the circuit court dismissed the actions challenging it after the parties reached a settlement that reduced the contingent payments to Messrs. Cole, Nemer, and other CREI executives. The shareholders filed a Notice of Appeal in this Court, and the appeal was dismissed on July 31, 2014 after the defendant executives agreed to reimburse $100,000 to the shareholder plaintiffs.

**B.      The Second Merger: ARCP Acquires CREI.**

In late August or September 2013, ARCP's CEO again approached Messrs. Cole and Nemer and expressed interest in a potential merger. CREI retained Goldman Sachs to advise the Board about ARCP's business, to review ARCP's financial results and financial projects, and to review the terms of the merger proposal. CREI also retained the law firm Morris Manning & Martin LLP to conduct due diligence on ARCP's real estate investments, including leases and portfolio information, as well as environmental, tax and litigation issues; the law firm Venable to advise the Board on the applicable law in

3

Maryland; and the accounting firm Deloitte & Touche LLP to conduct a financial and accounting due diligence investigation of ARCP. The companies announced a merger agreement on October 23, 2013, under which ARCP would exchange 1.0929 shares of ARCP common stock or $13.82 in cash for each share of CREI common stock (the cash option was available for up to 20% of CREI's outstanding shares). The transaction was valued at $11.2 billion.

In response to the announcement, eight new class action and derivative complaints—including one action by Ms. Polage—were filed in the Circuit Court for Baltimore City between October 30, 2013 and November 14, 2013. These lawsuits alleged that CREI's directors breached their fiduciary duties to the stockholders and sought, among other things, an order enjoining the transaction. The court consolidated these actions as *Polage v. Cole* on December 12, 2013, and a few days later, the *Polage* plaintiffs filed a consolidated complaint that, again, asserted both derivative and class action claims challenging the merger. Several federal securities class action complaints were also filed in the United States District Court for the District of Arizona in October and November 2013.[1]

The parties also engaged in negotiations regarding a possible settlement, and on January 10, 2014—the day of the injunction hearing—the plaintiff shareholders and CREI

---

[1] These federal cases were stayed in February 2014 pending a ruling from the circuit court on settlement of the state class actions.

directors entered into a Memorandum of Understanding containing the material terms of a settlement. Among other things, the agreement permitted the plaintiff shareholders to engage in additional discovery to confirm that the settlement was fair and adequate. The CREI stockholders voted to go through with the merger at a special meeting on January 23, 2014, and the merger closed in February of that year.

The parties submitted a settlement agreement for approval to the circuit court on August 18, 2014. As consideration for dismissing the claims against them, the CREI directors and executives agreed to relinquish $50 million in personal payments, and to establish a $14 million settlement fund for distribution to class members. In addition, the CREI executives agreed to provide shareholders with previously undisclosed material information concerning the merger via a Form 8-K they would file with the Securities and Exchange Commission ("SEC"). The CREI defendants also agreed not to oppose the plaintiff shareholders' application for $7 million in attorney's fees and reimbursement of expenses, and the settlement released both CREI and ARCP from future liability. The court issued a preliminary approval of the settlement on August 25, 2014, preliminarily certified the class, and ordered that notice be distributed to CREI's shareholders.

## C. The October Surprise.

On October 29, 2014, ARCP announced that it had overstated the operating funds and understated the net losses it reported in its first and second quarter 2014 financial results. According to ARCP, financial information as far back as 2013 could no longer be

5

relied upon. The announcement spurred an investigation by the SEC, and the company's stock price dropped from $12.38 per share to $7.85 per share within two trading days.

The announcement also spurred a series of federal securities lawsuits against ARCP in the United States District Court for the Southern District of New York. The consolidated class action complaint alleges that ARCP director defendants prepared, reviewed, and disseminated false and misleading proxy statements in order to get shareholder approval for the merger with CREI, and in violation of § 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), in addition to alleging that ARCP officers and directors fraudulently induced class members to purchase ARCP stock for artificially inflated prices in violation of § 10(b), 15 U.S.C. § 78j(b). It also asserts claims under § 11 of the Securities Act, 15 U.S.C. § 77k, alleging that statements and prospectuses issued in connection with ARCP's stock offerings contained material misstatements and omissions about ARCP's financial statements; under § 12(a)(2), 15 U.S.C. § 77l(a)(2), alleging that ARCP officers and directors who assisted in the sale of those securities to class members did so for personal gain, including direct payments; and under § 15, 15 U.S.C. § 77o, asserting that ARCP officers and directors who controlled the content of those prospectuses should be held jointly and severally liable for the underlying § 11 and § 12(a)(2) violations. The complaint asserts that the defendant-directors' wrongful conduct inflated ARCP securities prices and resulted in the subsequent decline in value of those securities when the fraud was revealed.

6

The parties resumed their negotiations, and agreed in November 2014 to amended settlement language that carved ARCP's director and officers out of the release. As in the original settlement, the amended settlement language still released CREI's officers:

> "Released Claims" means . . . [any] claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations . . . against any Released Persons, relating to or based upon the ARCP Announcement or ARCP Financials *except that nothing in this clause (ii) shall impair the completeness of the release of any of the Director Defendants, former CREI officers or outside advisors to CREI and/or to the Director Defendants for conduct occurring before the Merger closed on February 7, 2014* to the extent such Director Defendants, former officers or outside advisors were acting in their capacity as directors or officers of CREI . . . .

(Emphasis added.) As a condition for releasing CREI's officers from liability, the parties agreed that the plaintiff shareholders could take discovery to ensure that they had no knowledge of or role in ARCP's preparation of its misstated financial statements. To that end, the plaintiffs deposed CREI's former CEO, Mr. Nemer, on December 2, 2014, and examined him regarding the steps CREI's board took to ensure that ARCP's financials were solid and that its stock was worth the market price. Stated generally, Mr. Nemer responded that CREI retained and relied on outside advisors, including Goldman Sachs and Deloitte, to conduct CREI's due diligence for the ARCP merger and to advise CREI's board and officers.

Five shareholders, including Mr. Shenker, objected to the amended settlement. They argued that because CREI's officers made false statements about ARCP's finances

7

in the Joint Proxy to shareholders, those officers, and especially Mr. Nemer, should not be released from future liability for claims arising from ARCP's financial fraud.

The circuit court held an all-day settlement hearing on December 12, 2014, then issued a written order approving the amended settlement, including the modified release language:

> The Court has closely reviewed and considered each objection, cited legal authorities, and the entire arguments offered by the parties and objectors on December 12, 2014, in view of the nature, issues, context, and circumstances of the litigation. The Court has also carefully reviewed and considered the terms and disclosures of the Joint Proxy (filed December 23, 2013); timing, terms and conditions of the Memorandum of Understanding ("MOU") dated January 10, 2014; the Transaction closing date on February 7, 2014, the ARCP Forms 8-K and 10-K, with a filing date on February 27, 2014 (for the Fourth Quarter and the Fiscal Year that ended December 31, 2013); the Court's August 25, 2014 Order and preliminary approval of the settlement terms reached on August 14, 2014; the motion papers with Amended Stipulation and Release and Agreement of Compromise and Settlement; and the December 2, 2014 deposition testimony of CREI Director Marc Nemer.

(Footnote omitted.)

The court found the amended settlement fair, adequate, and reasonable, and that "the scope of the revised Release, in the aftermath of ARCP's announcement, reasonably 'carve[d] out' potential claims against ARCP directors and officers arising out of or relating to" ARCP's October 2014 announcement. Moreover, the court concluded that the amended settlement language "d[id] not and need not address any such claims against Cole directors and officers." The court cited "the chronological sequence of CREI and advisors'

8

examination of ARCP financial disclosures and certain audited reports in advance of the Joint Proxy, in advance of the MOU, and in advance of the Transaction date" in deciding to approve the settlement. Mr. Shenker filed a timely notice of appeal.[2]

## II. DISCUSSION

Mr. Shenker's three appellate contentions (which we will address in a slightly different order)[3] boil down to a core complaint that the amended settlement was unfair to the class. *First*, he argues that the court failed to make adequate factual findings or

---

[2] In addition to Mr. Shenker, four other shareholders objected: Simon Abadi, Jill B. Carter, Gary Wunsch, and the California Public Employees' Retirement System. Only Mr. Shenker appealed to the circuit court's settlement approval, however.

[3] Mr. Shenker phrased the issues as follows in his brief:

> 1. Is the Settlement unfair and inadequate where it releases defendants and their agents and affiliates from liability of valuable unrelated federal claims that arose after a preliminary settlement, based on limited discovery, and without adequate consideration?
>
> 2. Did the Circuit Court fail to conduct a careful assessment of the facts and a thorough analysis of applicable law by concluding the Release is "reasonable" without making factual findings, articulating any standard for determining reasonableness or considering the merits or value of released claims?
>
> 3. Does the Settlement violate Due Process because it released individual defendants from liability for federal claims that are not based on the same factual predicate as the Settlement's underlying state claims and did so for meager consideration?

9

articulate the standard of reasonableness on which it based its conclusions. *Second*, he contends that the settlement's release of potentially valuable claims against CREI's officers, particularly Mr. Nemer, render the settlement unfair and inadequate. And *third*, in his view, those same defects demonstrate that the settlement violated the class's due process rights.

Unlike most settlements of civil actions, class action settlements must be approved by the court. *See* Md. Rule 2-231(h) ("A class action shall not be dismissed or compromised without the approval of the court."). Our Rule does not state a specific standard for the court to apply. *See Boyd v. Bell Atlantic-Md.*, 390 Md. 60, 70-71 (2005) (acknowledging that Rule 2-231 does not articulate any standards against which a court should evaluate the fairness and adequacy of a settlement proposal). But "[w]hen interpreting a Maryland Rule that is similar to a federal rule of Civil Procedure, we may look to federal decisions construing the corresponding federal rule for guidance." *Bond v. Slavin*, 157 Md. App. 340, 358 n. 30 (2004) (quoting *Pleasant v. Pleasant*, 97 Md. App. 711, 732 (1993)). And Federal Rule of Civil Procedure 23(e), the federal analogue to Rule 2-231(h), does set forth a process for evaluating class action settlements and requires the court, as part of that review, to find the settlement "fair, adequate, and reasonable":

> Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

10

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Unlike Maryland Rule 2-231(h), Federal Rule 23(e) has been applied and analyzed thoroughly in reported decisions of Maryland's federal district courts and the Fourth Circuit, as well as nationally. *See, e.g., Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015); *In re Jiffy Lube Securities Litig.*, 927 F.2d 155 (4th Cir. 1991); *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F.Supp. 1379 (D. Md. 1983); *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305 (D. Md. 1979). Not surprisingly, then, the parties' arguments follow Federal Rule 23's analytical path, and we will do the same.

11

The federal courts evaluate proposed class action settlements in two steps: *first*, by evaluating the procedural fairness of the settlement process, and *second*, by evaluating the settlement's substantive fairness and adequacy. When reviewing a trial court's decision to approve a class action settlement, "there is a strong presumption in favor of finding a settlement fair." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014). We afford the trial court's decision substantial deference, and reverse only upon clear showing that the court abused its discretion. *See Berry*, 807 F.3d at 614 (quoting *Flinn*, 528 F.2d at 1172); *Jiffy Lube*, 927 F.2d at 158.

## A. The Circuit Court Sufficiently Articulated Its Reasoning.

Mr. Shenker argues that the court did not make adequate factual findings or articulate any standard for determining that the settlement was reasonable. He characterizes the court's approval of the settlement as conclusory, and contends that the court "failed to carefully assess the facts and law as required." It's true that the court did not state, in so many words, which particular standard it used to evaluate the amended settlement and release language, nor did the court undertake the step-by-step analysis for settlement approval that we explain below and that appears in the federal cases analyzing Federal Rule 23(e). Ultimately, though, we disagree that the court's decision was conclusory or preordained, and we discern an appropriately thorough analysis from the court's written order and the transcript of the full-day fairness hearing.

Although a trial court may not give a settlement boilerplate approval, it need not "turn the settlement hearing into a trial or a rehearsal of the trial, nor need it reach any

dispositive conclusions on the admittedly unsettled legal issues in the case." *Flinn,* 528

F.2d at 1172-73 (footnotes, internal citations, and quotations omitted).

> So long as the record before it is adequate to reach an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated and form an educated estimate of the complexity, expense, and likely duration of such litigation, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise, it is sufficient.

*Id.* at 1173 (footnote and internal citations omitted). As a procedural matter, this settlement

complied both with Md. Rule 2-231(h) and the process outlined in Federal Rule 23. Notice

of the proposed settlement was sent to all class members; the parties filed and the court

reviewed briefs in support of and against the revised settlement; and the court heard

objections from opposing class members, both in writing and at a hearing (without subject

or temporal limitation) designed to address the settlement's reasonableness, fairness, and

adequacy.

The court's written decision approving the settlement is not lengthy, and only a

portion of the court's memorandum analyzes the substantive merits of the settlement. For

that reason, our appellate task would be easier if the court had, either from the bench or in

its written order, undertaken a full-blown, step-by-step Rule 23-style analysis, as the

federal courts typically do. Then again, our review of numerous (although many

unreported) cases from the federal trial courts reveals that they undertake the analogous

Rule 23(e) analysis in widely varying levels of detail, depending on the facts and

circumstances of each case. *See, e.g., Boyd v. Coventry Health Care, Inc.,* 299 F.R.D. 451,

13

460-61 (D. Md. 2014).  Above all, our task is to determine whether the circuit court was well-informed to determine the fairness and adequacy of the settlement, and that it reached a well-reasoned decision.  And in this case, we can see from the written memorandum and from the transcript of the fairness hearing that the circuit court considered and analyzed this settlement in a manner consistent with the requirements of Federal Rule 23(e), and reached its ultimate conclusion that the settlement was fair, reasonable, and adequate on a fully informed basis.  *See United States v. North Carolina*, 180 F.3d 574, 581 n.5 (4th Cir. 1999) (holding that the district court abused its discretion by refusing to approve the settlement, but declining to base its decision on the fact that the district court did not explicitly go through the step-by-step analysis articulated in *Flinn v. FMC Corp*).

Mr. Shenker argues that the circuit court failed to take proper account of Mr. Nemer's testimony on the extent of CREI's due diligence (or the lack thereof).  But in the course of the fairness hearing, the circuit court demonstrated that it had carefully reviewed and considered all of the evidence, including Mr. Nemer's deposition and the "'reverse due diligence' undertaken by outside advisors" in association with the merger.  Moreover, this complaint is really more a complaint about the relative weight the court afforded that piece of evidence, and that point of view, over any other.  As we explain next, the circuit court's conclusions as to the settlement's substantive fairness and adequacy are supported by the record.

14

**B.      The Circuit Court Did Not Abuse Its Discretion By Approving The Settlement.**

Mr. Shenker argues *next* that the amended settlement releasing CREI officers from future liability is unfair and inadequate because it releases valuable claims shareholders have against those officers under Section 14(a) of the Securities Act—claims worth far more, he says, than the value of the settlement itself.  The circuit court's job in assessing the settlement was to weigh the relief awarded to class members against the claims they give up in exchange, thereby protecting "class members whose rights may not have been given adequate consideration during the settlement negotiations."  *In re Jiffy Lube*, 927 F.2d at 158.  Mr. Shenker contests the circuit court's decision on both fairness and adequacy grounds, but we see no abuse of the circuit court's discretion in its decision to approve the amended settlement.

**1.      Fairness**

Mr. Shenker argues that the settlement, and more specifically the release, was unfair to class members because it was rushed after ARCP announced the accounting irregularities.  He claims that post-settlement discovery was too limited and too hurried to ensure a fair settlement, and that the rush to settle left the circuit court unable to determine the strength of the plaintiffs' case.  Keeping in mind that the release the parties settled on releases claims only against CREI's officers, and not against the ARCP officers that actually committed the accounting fraud, we conclude that the circuit court made no error in finding the terms of the settlement fair.

In approving a settlement, the court must ascertain that it was reached "as a result of good faith bargaining at arm's length." *Id.* at 159. To determine if the proposed terms are *fair*, the court should consider factors tending to show "the presence or absence of collusion among the parties." *In re Mid-Atl. Toyota*, 564 F.Supp. at 1383 (quoting *Montgomery Cty.*, 83 F.R.D. at 315). That is, "the posture of the case at the time settlement is proposed, the extent of discovery that has been conducted, [and] the circumstances surrounding the negotiations and the experience of counsel." *Id.* at 1383-84 (quoting *Montgomery Cty.*, 83 F.R.D. at 315); *see also Carson v. American Brands, Inc.*, 654 F.2d 300, 301 (4th Cir. 1981) (*en banc*) (*per curiam*); *Flinn*, 528 F.2d at 1173 (articulating the fairness factors as "the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement, and the experience of counsel who may have represented the plaintiffs in the negotiation").

There is no allegation here that the settlement is the product of collusion. Rather, Mr. Shenker complains that the settlement was reached too soon after ARCP's announcement, without enough discovery to allow a full evaluation of the potential culpability of CREI insiders under the federal Securities Acts. Beyond a general complaint that more depositions weren't taken and new searches for documents or email weren't made, though, nothing in the record indicates that the information available to the court, most importantly Mr. Nemer's testimony, was inadequate to assess the merits of the potential claims against CREI's officers. To the contrary, the record allowed the objectors to argue about the evidence that wasn't there, *i.e.*, the absence of evidence of more

16

extensive due diligence.  And in any event, the circuit court accounted for the timing of the amended settlement as well as the contents of Mr. Nemer's deposition in its conclusion that the settlement was fair.

## 2. Adequacy

Under the amended settlement, the class members relinquished the right to bring suit against CREI officers for any false statements made on the Joint Proxy, in exchange for the ability to bring claims against ARCP's officers (claims that were released in the original settlement), a $14 million cash payment, and the relinquishment by Messrs. Cole and Nemer of $50 million in personal payments.  In evaluating the adequacy of a proposed settlement, the trial court should "'weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'" *In re Mid-Atl. Toyota*, 564 F.Supp. at 1384 (quoting *Montgomery Cty.*, 83 F.R.D. at 315).  In so doing, the court should consider: "'(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.'" *Id.* (quoting *In re Montgomery Cty.*, 83 F.R.D. at 316).

As for "the relative strength of the plaintiffs' case on the merits," *In re Mid-Atl. Toyota*, 564 F.Supp. at 1384, the record before the circuit court revealed a theoretical, but highly uncertain, claim against CREI's officers under § 14(a) of the federal Securities Act. 15 U.S.C. § 78n(a).  Mr. Shenker argues that Mr. Nemer's testimony proves that CREI

"failed to conduct a meaningful assessment of ARCP's financial controls, processes or reporting practices." However, there is nothing in the record to indicate the *value* of the potential Securities Act claims, nor does Mr. Shenker attempt to estimate one. The parties argue vigorously over the *scienter* requirement for a § 14(a) claim, but even if we assume, as Mr. Shenker argues, that a plaintiff need only prove negligence, the record makes it far from clear that these claims would survive that low threshold. In addition to testifying that he could not recall whether CREI's accountants reviewed ARCP's financial controls, Mr. Nemer also testified that CREI retained several outside financial and legal advisors to review the terms of the merger and ARCP's financial statements, and we see no abuse of discretion in the circuit court's decision to credit that testimony for its purposes.

More to the point, though, and even assuming that the class could readily prove *liability* against the CREI directors under § 14(a), it is not unreasonable for the court to wonder if those claims have any marginal *damages* value given the class's ability to bring the same claims against ARCP and its directors and officers. Damages in § 14(a) claims are measured by market loss, *see, e.g., Maldonado v. Flynn*, 477 F.Supp. 1007, 1009 (S.D.N.Y. 1979), and it appears that the same market loss at issue here could be recovered from a successful claim against the CREI defendants—the alleged misstatements were communicated to CREI's shareholders through ARCP's section of the joint proxy, and, as the CREI directors point out, "the merger agreement requires ARCP to indemnify CREI's former officers and directors for any such liability, [so] the CREI defendants would not even provide a potential source of recovery separate and distinct from ARCP." *In re Mid-*

18

*Atl. Toyota*, 564 F.Supp. at 1384 (directing courts to consider the likelihood of recovery on a litigated judgment).

We don't purport to resolve these disputed securities law questions definitively. It is enough for our purposes that the record and competing legal arguments before the circuit court raised serious uncertainties about the likelihood of success on the merits of any claims the objectors might have had against the released CREI parties, or the marginal value of those claims in light of the claims that survived the release. And as such, the circuit court did not abuse its discretion in finding that the settlement consideration—most notably, the reinstatement of the class's claims against ARCP and its directors and officers—was adequate under the circumstances.

## C.    Approval of the Amended Settlement Agreement Poses No Due Process Violation.

*Finally*, Mr. Shenker seems to argue, based on a repackaging of the claims discussed above, that the amended settlement violated the due process rights of the absent class members, whom he argues were not adequately represented by the plaintiff class members' counsel. He relies on *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, for the proposition that "a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action, even though the claim was not presented and might not have been presentable in the class action." 516 U.S. 367, 376-77 (1996) (citation and quotation omitted). He argues that *Matsushita* should have prevented the circuit court from releasing the potential Securities Act claims against CREI officers and

19

directors because the facts underlying those claims did not arise from the same operative facts as those asserted in the current action.

Putting aside the defendants' arguments that Mr. Shenker failed to preserve this issue in the circuit court, the argument fails for the same reasons as his other arguments. Moreover, Mr. Shenker's reliance on Justice Ginsburg's concurrence in *Matsushita* is misplaced. While there may be a due process problem if the class representatives are willing to "release federal securities claims within the exclusive jurisdiction of the federal courts for a meager return to the class members," *id.* at 388, that is not what happened here. Beyond the terms of the original settlement, the amended settlement gave class members the ability to bring Securities Act claims against ARCP officers and directors, who otherwise would have been released, and it was entirely reasonable on this record for the circuit court to conclude that this trade-off was fair, especially considering the uncertainty of any federal claims against CREI officers.

The dispositive question in a due process challenge to a class action settlement is whether class counsel adequately represented the interests of the class. Md. Rule 2-231(a)(4). The trial court explicitly found that "Plaintiffs and their counsel are adequate representatives of the class," and indeed, produced a fair and adequate amended settlement.

20

We see no abuse of discretion in the court's finding in this regard, or in any element of its decision to approve this settlement.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**