In re JIFFY LUBE SECURITIES LITIGATION.

Joseph E. KOVACS; Robert Cook; Joseph A. Paglia; Helen P. Paglia; Aubrey C. Gordon, Jr., on his own behalf and on behalf of all those similarly situated; David Berman; Libby Berman, on their own behalf and on behalf of all those similarly situated; Rodney Shields, on behalf of himself and on behalf of all those similarly situated; Frank Aloise; Anne Aloise; Charles J. Mackler; Harvey A. Harris; Kenneth Wiseman, Trustees for the Dr. Harvey A. Harris Limited, Defined Benefits Pension Plan, Plaintiffs–Appellees,

and

Larry Kamanitz; Evelyn Kamanitz, Plaintiffs,

v.

ERNST & YOUNG, Defendant–Appellant,

Jiffy Lube International, Inc.; W. James Hindman; Shearson Lehman Brothers, Inc., individually, and as representative of a defendant underwriter class; Edward F. Kelley, III; Eleanor C. Harding; Alex. Brown & Sons Incorporated, Individually and as representative of class underwriter defendants, Defendants–Appellees.

No. 90–3016.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1990.

Decided Feb. 26, 1991.

As Amended March 18, 1991.

As Amended June 3, 1991.

---

See also 130 F.R.D. 42.

Wilbur Day Preston, Jr., Whiteford, Taylor & Preston, Baltimore, Md., argued (Fenton L. Martin, William F. Ryan, Jr., Albert J. Matricciani, Jr., Katherine L. Taylor, Whiteford, Taylor & Preston, Baltimore, Md., Richard McLaren, Ernst & Young, Cleveland, Ohio, on the brief), for defendants-appellants.

Steven J. Toll, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., Eric S. Hutner, Wilkie, Farr & Gallagher, New York City, argued (Andrew N. Friedman, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., Stephen W. Greiner, Wilkie, Farr & Gallagher, Bruce E. Gerstein, Ellen G. Makofsky, Garwin, Bronzaft, Gerstein & Fisher, New York City, Elwood Simon, Matthew M. Neumeier, Schlussel, Lifton, Simon, Rands, Galvin & Jackier, Southfield, Mich., John Henry Lewin, Jr., Venable, Baetjer & Howard, Baltimore, Md., Terence P. Quinn, Steptoe & Johnson, Washington, D.C., John Bucher Isbister, William C. Sammons, Tydings & Rosenberg, Baltimore, Md., Eugene A. Spector & Associates, Philadelphia, Pa., Bruce G. Murphy, P.C., Virginia Beach, Va., Rudolph, Seidner, Goldstein, Rochestie

& Salmon, P.C., Philadelphia, Pa., Cohan & Haldenstein, Adler, Freeman & Herz, New York City, Schoengold & Sporn, New York City; Levin, Fishbein, Sedran & Berman, Philadelphia, Pa., Martiss V. Anderson, Goodkind, Labaton & Rudoff, Rabin & Sirota, Wolf, Popper, Ross, Wolf & Jones, New York City, Bruce K. Cohen, Meredith & Cohen, P.C., Philadelphia, Pa., Michael J. Freed, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., Charles Samuel Fax, Shapiro & Olander, P.A., Baltimore, Md., on the brief), for plaintiffs-appellees.

Before ERVIN, Chief Judge, RUSSELL, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

ERVIN, Chief Judge:

This appeal presents an issue raised for the first time in this Circuit: whether, in a federal securities class action suit, a partial settlement between plaintiffs and most defendants which grants the non-settling defendants a right of setoff, in exchange for barring them from claims of contribution or indemnity in suits against the settling defendants, may be approved when the settlement agreement provides that the method for calculating that setoff will not be determined until such time as an eventual judgment against the non-settling defendants may be entered.

We find that failure to determine a method to calculate the setoff at the time of settlement prejudices both plaintiffs, who are deprived of information affecting the desirability of the proposed settlement, and non-settling defendants, who may not receive appropriate credit for having given up the right to contribution. We therefore vacate the district court's approval of this settlement and remand for determination of an appropriate setoff method.

## I.

The litigation underlying this appeal, styled *In re Jiffy Lube Securities Litigation*, involves seven consolidated class actions brought by shareholders against Jiffy Lube International, Inc. (JLI) and other defendants. These class actions were filed on or after June 30, 1989. The plaintiffs sought damages under Sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l* (2), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and under the Maryland common law of negligent misrepresentation and fraud and deceit. Plaintiffs are purchasers of JLI common stock, during the period of July 22, 1986 through June 9, 1989, who sustained losses. Plaintiffs' claims allege that the 1986 and 1987 registration statements and prospectuses filed with the SEC, as well as later periodic reports to the SEC, annual reports, proxy statements, and press releases issued by JLI's officers, contained materially false representations and materially misleading omissions concerning JLI's assets, earnings, and prospects. Defendants include officers of JLI, a class of underwriting and securities brokerage firms, and Ernst and Young, JLI's independent auditor during the class period.

The district court found that, at the time the suits were filed, JLI had over $100 million in debt that was in default and was contemplating seeking protection under Chapter 11 of the Bankruptcy Code. On or about July 26, 1988, Pennzoil, a major supplier to JLI who is not a party to these proceedings, announced an agreement with JLI whereby Pennzoil would purchase a new issue of JLI common stock sufficient to give Pennzoil 80% control. Under the proposed agreement, Pennzoil would also provide an additional cash contribution of approximately $20 million, and JLI's remaining debts would be restructured. This plan was to be implemented on or about October 1, 1989, but only on condition that the *Jiffy Lube* litigation was settled.

Settlement negotiations between counsel for plaintiffs and JLI began in late August 1989. All defendants participated except Ernst & Young, who denied all liability. In the course of these negotiations, plaintiffs' counsel undertook informal discovery regarding their fraud claims and JLI's precarious financial situation. Ernst & Young

alleges that it received no notice of this discovery.

The parties arrived at a settlement agreement in early October. The proposed settlement amount was $9.5 million. A feature of the settlement, required by Pennzoil as a condition of settlement, was a bar order enjoining Ernst & Young, the non-settling defendants, from making future claims for contribution or indemnity against the settling defendants or Pennzoil.

The parties presented the proposed settlement to the United States District Court for the District of Maryland at Baltimore. On October 13, the district judge gave tentative approval of the settlement pending notice to the class and further informal discovery. Notices were sent to approximately 12,000 purchasers of JLI stock during the class period; only one shareholder expressed opposition to the settlement terms.

The district court then held hearings on the bar order and on approval of settlement pursuant to Federal Rule of Civil Procedure 23(e). At the Rule 23(e) hearing, plaintiffs' counsel stressed the need for immediate settlement approval in order to keep Pennzoil from backing out of its commitment to JLI, and stated that the plaintiffs through their informal discovery had assured themselves that the settlement was fair. Plaintiffs claimed that their damage expert had estimated damages exceeding $100 million.

On December 15, 1990, the district court entered a final order and judgment approving the settlement and enjoining Ernst & Young from cross-claims or suits against the settling defendants or Pennzoil for contribution or indemnity. Clause 9 of the agreement grants Ernst & Young the right to offset any future judgment against it in this action, but defers determination of the legal rule to apply for purposes of determining this setoff as regards federal claims until such time as a judgment may be entered.

Ernst & Young appeals the final order and judgment, on the grounds that (1) the

bar order was imposed without a fairness hearing focussing on fairness to Ernst & Young (as opposed to the Rule 23(e) hearing, whose focus is on fairness to the plaintiffs); and (2) the manner in which Ernst & Young's setoff would be determined was not designated, causing the risk that Ernst & Young might not receive any compensation for being forced to forego its right to claim contribution from the settling defendants.

## II.

Rule 23(e) provides that "a class action shall not be dismissed without the approval of the court." The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations. *Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 546 (D.Colo.1989); *In re Financial Management, Inc. Securities Litigation,* 718 F.Supp. 1012 (D.Mass.1988). If the proposed settlement is intended to preclude further litigation by absent persons, due process requires that their interests be adequately represented. *Manual for Complex Litigation 2d,* § 23.14 at 166 (1985). Nevertheless, "it is entirely in order for the trial court to limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). We review the approval of the class action settlement to determine whether there was "a clear showing that the district court abused its discretion." *Flinn, supra,* 528 F.2d at 1172.

In examining the proposed JLI settlement for fairness and adequacy under Rule 23(e), the district court properly followed the fairness factors listed in Maryland federal district cases which have interpreted the Rule 23(e) standard for settlement approval. *See In re Montgomery County Real Estate Antitrust Litigation,* 83 F.R.D. 305 (D.Md.1979).[1] The court deter-

---

1. These factors are consistent with those that    have been used by other federal courts in assess-

mined that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation.

In its consideration of the first three factors as applied to this settlement, the court acknowledged that the settlement was reached at a very early stage in the litigation and prior to any formal discovery, raising questions of possible collusion among the settling parties. However, the court found that any inference of collusion was offset by other factors, including the plaintiffs' informal discovery, substantial concessions made by both sides, and the parties' common interest in preventing JLI's bankruptcy, coupled with the experience of plaintiffs' counsel in realistically assessing the effect such bankruptcy might have on the availability of funds to satisfy any ultimate judgment on the merits.

The district court's assessment of the adequacy of the settlement was likewise based on factors enumerated in *Montgomery:* (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

We have held that a reasonable judgment on the possible merits of the case is best achieved when all discovery has been completed and the case is ready for trial. *Flinn, supra,* 528 F.2d at 1173. Although this settlement was reached so early in the litigation that no formal discovery had occurred, the court found that documents filed by plaintiffs and evidence obtained through informal discovery yielded suffi-

cient undisputed facts to support the extent of JLI's insolvency and the difficulties plaintiffs would have in proving fraudulent intent under both federal and state securities laws. As indicative of adequacy from the point of view of informed class members, the district court also gave great weight to the fact that only one of over 12,000 class members notified expressed opposition to the terms of settlement.

■ Ernst & Young alleges that the court should have made some determination as to the appropriate contribution of each settling defendant to the settlement fund, as well as to whether Pennzoil paid any additional consideration into the fund over what it had agreed to pay in consideration for the issuance to it of new JLI common stock. It has been held, however, that for Rule 23(e) to be satisfied, the court must determine only that sufficient compensation is being paid to the class, without necessarily speculating as to the appropriateness of the contributions of the various settling defendants. *Alvarado, supra,* 723 F.Supp. at 548.

It is clear that the fairness and adequacy factors considered by the district court relate primarily to the concerns of the plaintiff class members, as is appropriate for Rule 23(e) purposes. The record, however, indicates that Ernst & Young was represented and expressed its viewpoint at the court-conducted proceedings. Ernst & Young alleges unfairness stemming from the court's failure to compel plaintiffs to produce for Ernst & Young copies of the informal discovery conducted by plaintiffs. The issue of whether to grant Ernst & Young's motion is a matter of the district court's discretion. The district court owed no specific duty of fairness to Ernst & Young beyond ensuring that Ernst & Young had the opportunity to be heard at the hearing and was fairly compensated for yielding its right to seek contribution.

ing fairness under Rule 23(e). *See, e.g., Alvarado Partners L.P. v. Mehta,* 723 F.Supp. 540, 546–48 (D.Colo.1989). This Circuit has also applied the same factors to the review of a settlement agreement under Title VII, Civil Rights Act of 1964. *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976).

The district court acted appropriately within its discretion in its conduct of the hearing on settlement approval. Rule 23(e) required the court to consider the fairness and adequacy of the settlement primarily with regard to the interests of the plaintiff class members, and the court appears to have given the interests of the non-settling defendant Ernst & Young proper consideration as well. A separate hearing on fairness from the perspective of the non-settling defendant is not required unless the district court chooses to adopt the "pro tanto" method of setoff. *See infra,* n. 3.

## III.

■ Clauses 8 and 9 of the settlement agreement affect substantive rights of Ernst & Young in relation to the plaintiffs and settling defendants. Such clauses are appropriate in the context of a partial settlement involving federal securities laws, but as to Clause 9 we determine as a matter of law that the district court should have specified the method of setoff to be used in the federal claims.

Clause 8 bars Ernst & Young from asserting claims for contribution against any of the settling defendants or Pennzoil in the event any plaintiff seeks damages from Ernst & Young. Section 11 of the Securities Act of 1933 expressly preserves a right of contribution, and it is well established that there is a right to contribution for parties jointly liable for violating Section 10(b) and Rule 10b–5. *In re Atlantic Financial Management, supra,* 718 F.Supp. at 1015. Nevertheless, there is a trend toward the imposition of orders barring the exercise of this right in partial settlements involving federal securities law. *See, e.g., In re Atlantic Financial Management, supra; Alvarado, supra; Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). The justification for imposing a bar to contribution in such settlements is that in multi-defendant actions, the right to contribution removes the incentive to settle since non-settling defendants could still file claims for contribution against a joint tortfeasor who has been discharged of direct liability through settlement.[2]

If the non-settling defendant loses his right to contribution, provisions such as Clause 9 in the JLI agreement become necessary in order to ensure that the non-settling defendant pays no more than his share of any future judgment that may be entered against him in favor of plaintiffs. Clause 9 provides Ernst & Young with a setoff against any such judgment against it. With respect to any judgment based on state law claims, Clause 9 specifies that the method of determining this setoff is to be governed by state law, the Maryland Uniform Contribution Among Tort–Feasors Act. With respect to any judgment based on federal securities law claims, however, Clause 9 leaves the determination of the setoff until the time of entry of judgment, "based on controlling legal principles in effect at that time."

There is no case law in this Circuit which addresses the problem of which of the three most commonly used setoff methods[3]

---

**2.** Many states have enacted "settlement bar statutes" which allow the bar to the right of contribution, on condition that the settlement is made in good faith and that non-settling defendants are entitled to setoff against any judgment ultimately entered against them. *See, e.g.,* Md.Ann. Code art. 50, § 20 (1986 Repl.Vol.). Federal securities law, however, does not provide such a rule. Federal courts have thus imposed the bar as a matter of federal common law, finding that a fair and equitable settlement bars implied rights of contribution for federal securities claims. *See, e.g., First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.,* 631 F.Supp. 1029 (S.D.N.Y.1986).

**3.** These methods are the following: (1) *Pro tanto,* in which the judgment is reduced by the amount paid by the settling defendants; the non-settling defendant pays the remainder. This method exposes the non-settling defendant to liability for any deficiency in the judgment, so a hearing focussing on fairness of the settlement to the non-settling defendant is required for approval.

(2) *Proportionate fault,* in which the jury assesses the relative culpability of both settling and non-settling defendants, and the non-settling defendant pays a commensurate percentage of the judgment. Here, the plaintiffs bear the risk of a "bad" settlement and thus have incentive to obtain a settlement accurately ap-

should be adopted for federal law claims. The only courts of appeal which have ruled on this question, the Second and Ninth Circuits, have chosen to adopt different methods. *See Singer v. Olympia Brewing Co.,* 878 F.2d 596 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990) (adopting "pro tanto" method); *Franklin v. Kaypro, supra,* 884 F.2d 1222 (9th Cir.1989) (adopting "proportionate" method).

The choice is further complicated by the fact that federal securities cases typically involve pendent state claims, which are governed by applicable state law regarding contribution among joint tortfeasors. If the federal court chooses a method of setoff determination which is consistent with other federal jurisdictions but inconsistent with the provisions of the forum state's law, the setoffs would have to be figured differently with respect to each set of claims.

In the light of the difficulties of finding the correct law to apply in the federal securities setoff context, the district court chose not to specify which method is to be used in this case, instead allowing the choice to be deferred until such time as a judgment may be entered against Ernst & Young. Avoidance of this legal problem, however, threatens prejudice to Ernst & Young's substantive right of contribution, and may deprive the plaintiff class members of information affecting their ability to assess fairly the merits of the settlement.

As to plaintiffs, it is clear that the method of setoff chosen affects the desirability of a proposed partial settlement. For example, plaintiffs bear the risk of a "bad" settlement under the "proportionate" rule, while under the "pro tanto" rule the risk passes to the non-settling defendants and plaintiffs gain more certainty from the earlier resolution of the setoff figure. More-

over, the "proportionate" method entails a delay in ascertaining the final amount of setoff which makes it difficult to frame a notice to the class that fairly presents the merits of the proposed settlement. *Atlantic Financial, supra,* 718 F.Supp. at 1018. If the "proportionate" method is used, the notice to plaintiffs should inform them of this shortcoming. The plaintiff class's interest in the choice of setoff method is such that at least one court has held that the decision on setoff method must be considered by the class and its representatives before the settlement can be approved pursuant to Rule 23(c). *Id.* at 1014.

As to non-settling defendants such as Ernst & Young, the choice of setoff method determines to a large extent the manner in which a defense should be made at trial. The extent of wrongdoing of the settling defendants in relation to Ernst & Young's liability is either highly relevant (under the "proportionate" rule), minimally important (under the "pro rata" rule), or not important at all (under the "pro tanto" rule). Ernst & Young is entitled to know what the law of the case is in advance of trial, not on the eve, after discovery is concluded and witnesses have been prepared.

Moreover, the court's failure to designate a setoff method exposes Ernst & Young to the risk of receiving inadequate credit for the contribution bar imposed on it. There is certainly some risk involved under any of the methods the court might have chosen—not only for Ernst & Young but for the plaintiffs and settling defendants as well. However, choosing a method at least allows the parties to know what the nature of that risk is. The court assured Ernst & Young that it would use its "inherent equitable powers" to see that Ernst & Young receives an appropriate credit. Yet the court never explained how such powers would work to resolve the potential difficulties Ernst & Young fears

portioned according to fault. However, the final determination of the amount of setoff is necessarily delayed, making it difficult to frame a notice to the plaintiff class that fairly presents the merits of the proposed settlement.

(3) *Pro rata,* in which the judgment amount is simply divided by the number of defendants, settling and non-settling, that are found liable.

Relative culpability is not an issue. Since the settling defendants will already have satisfied their debt to plaintiffs, the non-settling defendant may have to pay a share larger than theirs if the judgment is greater than the settlement amount. Conversely, the non-settling defendant will pay less if the judgment is less than the settlement amount.

without also prejudicing either the plaintiffs or the settling defendants.

For these reasons, we direct that this proposed settlement agreement be vacated and remanded in order that the district court may amend Clause 9 to specify the setoff method to be used.

VACATED AND REMANDED WITH INSTRUCTIONS