**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA and College Retirement Equities Fund, Plaintiffs,**

v.

**Abraham D. BEAME, Comptroller of the City of New York, et al., Defendants.**

**No. 73 Civil 23.**

United States District Court,
S. D. New York.

March 24, 1975.

Roger & Wells, New York City, for plaintiffs; Howard G. Kristol, Richard J. Schulman, New York City, of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants Beame, Kibbee, Burkhardt, The City of New

York and The City University of New York; Leonard Bernikon, Kew Gardens, N. Y., Lester G. Freundlich, Associate Counsel, Bd. of Higher Ed., of counsel.

Goell & Roth, New York City, for defendants Cooper and Newland; Alexander Roth, New York City, of counsel.

Sylvia F. Rackow, New York City, intervenor for purpose of proving not a member of defendant class.

## OPINION

EDWARD WEINFELD, District Judge.

This is a motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, upon notice to all members of the class as heretofore determined, for approval of a settlement. At the hearing no opposition was offered to the settlement, but one individual appeared and moved that she be excluded from the defined class.

This interpleader action was commenced by plaintiffs, Teachers Insurance and Annuity Association of America and College Retirement Equity Fund, for a declaratory judgment as to their rights and those of others with regard to annuity contracts issued by plaintiff to 127 former faculty members of the City University of New York ("CUNY"). The defendants include city officials who made contributions toward the annuity contracts allegedly in violation of the applicable statute and the members of the class, as determined by an order of this court entered on July 25, 1973 pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

Plaintiffs were designated by the Board of Higher Education of the City of New York to administer an Optional Retirement Program for CUNY pursuant to statutory provisions.[1] As of January 1, 1968, CUNY faculty members qualified to join the teachers' retirement system were given the option to purchase annuity contracts issued by plaintiffs. These contracts were to be funded by contributions by both the electing employee and the City. Under the statute,[2] during the initial year of the employee's service, the joint contributions of the City and employee were not to be paid by the City Comptroller to plaintiffs; instead they were to be retained by the Comptroller until the "completion of one year of service." If an employee did not render more than one year's service, the Comptroller was to refund (with interest at four per cent per annum) to the employee the contributions which had been deducted from his salary.[3] The City would be relieved of any obligation to pay its share of the contribution to plaintiffs since the employee would not be a participant in the optional program.[4]

This action is the aftermath of the method used by the Comptroller in remitting annuity contributions to plaintiffs. After the effective date of the Optional Retirement Program, the Comptroller remitted to plaintiffs a single lump sum check covering all employees who were participants in Annuity Contract Plans, listing the employees and the amount to be allocated as a contribution to each employee's Annuity Contract. Included in these lump sum payments were contributions of employees who were not eligible under section 6252(4) of the Education Law—in short, the Comptroller, without waiting for the "one year of service" period required thereunder, paid over to plaintiffs funds consisting of the City's contribution and the employee's contribution that had been withheld from his salary payments. While some of the electing employees continued "in service" beyond the required one year period,

---

1. N.Y. Education Law, Art. 125–A, § 6250 et seq. (McKinney's Consol.Laws, c. 16, 1972).

2. N.Y. Education Law § 6252(4).

3. N.Y. Education Law § 6252(2).

4. N.Y. Education Law § 6252(4).

many did not. The City, apparently recognizing the payments to plaintiffs in behalf of the latter should not have been made, sought repayment; the plaintiffs alleging in effect they were innocent stakeholders, brought this declaratory judgment action to determine their rights, as well as those of the City and the defendant class, former CUNY teachers, estimated, as already noted, at 127. The class has been defined as:

"former employees of The City University of New York (i) who were appointed on or after the Fall 1967 semester, (ii) who elected to participate in the Optional Retirement Program administered by plaintiffs by purchasing Annuity Contracts thereunder, (iii) who did not already own any similar Annuity Contracts issued by plaintiffs, (iv) who did not complete one year in service to the university and continue in service thereafter and (v) to whose Annuity Contracts contributions were made by The City of New York." (Order of July 25, 1973, confirming the class.)

Under the court's order that the action be maintained as a class action, a law firm was appointed to represent the class, and following extensive negotiations between it and plaintiffs' counsel, the settlement now submitted for approval was reached. In substance it provides:

(1) all contributions (less administrative expenses of the settlement not to exceed $1,000, and allowance of reasonable counsel fees and disbursements to the class action attorneys not to exceed $3,000) made by the City toward the defendant class' annuity contracts shall be repaid to the City;

(2) upon such repayment to the City, all benefits or rights which purportedly accrued to the members of the defendant class under the annuity contracts as a result of the City's contribution shall be null and void;

(3) all contributions made directly by members of the class, while participating in the "Optional Retirement Program" toward annuity contracts issued to them by plaintiffs shall be retained by plaintiffs and accumulated in accordance with the terms and conditions of those annuity contracts. (A member of the class had the right to request the repayment of his or her contribution for a 45-day period ending August 26, 1974, but no class member exercised this right.);

(4) the settlement shall not affect any rights of the defendant class under Chapter 20, Title B of the New York City Administrative Code, New York Education Law, section 6207, or the Retirement and Social Security Law, McKinney's Consol.Laws, c. 51–A;

(5) upon performance of the terms of the settlement, all parties to the lawsuit shall be relieved of any duties arising from the claims which might derive from the matters in the complaint;

(6) the attorneys for the defendant class may apply to the court for an allowance of reasonable attorney fees and disbursements incurred in the action, not to exceed $3,000. As already noted, any allowance is to be deducted from the funds returned to the City by plaintiffs.

Following due notice to members of the class, hearings on the proposed settlement were conducted on September 24 and October 15, 1974.

I.

The general standard used to evaluate the settlement of a class action lawsuit such as this is that the terms must be fair and reasonable. In exercising its authority, the court is required to consider fully all the relevant factors without transforming the hearing into a trial or a rehearsal of the trial. The court's judgment must be based upon an independent evaluation of the settlement terms, but it should not substitute

its business judgment for that of the parties who worked on the settlement.[5] In a case such as this, the court is particularly concerned to see that the rights of passive class members are protected from the danger of collusion.[6]

■ Counsel representing the defendant class, after investigation of the underlying facts and applicable case law, concluded that (a) the contributions made by the City of New York on behalf of the defendant class were unlawful; (b) the City of New York was entitled to repayment of all such contributions; and (c) the members of the class were not entitled to any benefits under their annuity contracts arising from the unlawful contributions. Without passing definitively upon the issue, the court is satisfied that were the case to be tried the conclusions of counsel would be upheld. Accordingly, the terms of the settlement must be viewed against that likely result. As between plaintiffs and the City defendants, the agreement is the product of compromise following arms length bargaining. The City is to have its contributions returned; plaintiffs waive any right to apply for attorneys' fees and expenses; the City waives any claim for interest on the contributions to be returned to it; and the City also agrees to pay the administrative expenses of this settlement as well as any allowances to the attorneys for the class.

As to "employee contributions" made by the class action defendants to their annuity contracts while employed at CUNY, the employee was given the option to obtain the principal amount of those contributions. No class member exercised this option and these annuity contracts are continued in force. Members of defendant class who, upon terminating their service at CUNY, commenced employment at other institutions of higher learning which also participate in plaintiffs' retirement program will have those amounts credited to their contracts. Contributions made by the class members through salary deductions have already been returned to the class members. These provisions relating to the class group defendants appear fair and reasonable, particularly since it can hardly be claimed that their rights had vested with respect to their contributions made to plaintiffs.

The court upon the hearing questioned why the optional provision failed to include payment of interest in the event an employee sought repayment of his contribution. However, since no class member has exercised the right to liquidate his contributions, the issue is academic. Moreover, plaintiffs have submitted an affidavit which indicates that the employee contributions total approximately $8,000, that interest payments would be "de minimis," and that the computation of the "present accumulated value" of that part of the annuity contracts represented by the employee's contribution would involve substantial time and expense, far exceeding the "de minimis" interest. Thus the provision for continuing the annuity contracts at the option of the employee was agreed upon. The provision appears to be fair.

■ In sum, the settlement provides for the refund of moneys improperly

---

5. City of Detroit v. Grinnell Corp., 495 F. 2d 448, 462–63 (2d Cir. 1974); Young v. Katz, 447 F.2d 431 (5th Cir. 1971); Norman v. McKee, 431 F.2d 769 (9th Cir. 1970), cert. denied sub nom. Security Pac. Nat'l Bk. v. Myers, 401 U.S. 912, 91 S.Ct. 880, 27 L. Ed.2d 811 (1971); Blank v. Talley Indus. Inc., 64 F.R.D. 125, 129 (S.D.N.Y.1974); Levin v. Mississippi River Corp., 59 F.R.D. 353, 361 (S.D.N.Y.), aff'd on opinion below sub nom. Wesson v. Mississippi River Corp., 486 F.2d 1398 (2d Cir.), cert. denied, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973).

6. See 7A C. Wright & A. Miller, Federal Practice & Procedure § 1797 at 229–30 (1972).

turned over to the plaintiffs by the Comptroller, while allowing those class members who have made contributions that are unrelated to the unauthorized payments involved in this lawsuit to continue their annuity contracts with plaintiffs. Class members are foreclosed from alleging any claim to annuity contracts on the basis of the Comptroller's improper payments, in accordance with the statutory provision that no rights vest unless and until the employee has completed more than one year of service,[7] and plaintiffs are thus relieved of any obligations as a result of the Comptroller's payments. In this direct manner, the settlement corrects the Comptroller's mistake. The settlement is approved.

## II.

Intervenor Sylvia F. Rackow denies plaintiffs' and the municipal defendants' allegation that she is a member of the defendant class. She contends that she completed more than one year in service to CUNY after an initial appointment for the fall semester of 1966 and should therefore be excluded from the class because she does not satisfy the fourth element of the class definition: that the members of the class "did not complete more than one year in service to [CUNY] and continue in service thereafter."

Rackow worked for CUNY as a Speech Instructor from 1966 to 1969. She claims she was hired on an annual salary basis and remained so employed until she resigned on August 31, 1969. CUNY's records, however, indicate that only in her last year of employment

with CUNY, 1968–1969, did she receive an annual appointment and only in this year was she eligible for and did she join the optional retirement program.

Appointment on an annual basis rather than appointment for some number of months is important because New York Education Law provides that only those teachers appointed on an annual salary basis are eligible for a pension program.[8] Only these eligible employees are given the option of joining either the teachers' retirement system or the optional retirement program.[9] If the eligible employee decides to join the optional retirement program, he is termed an electing employee.[10] Section 6252(4) of the Education Law provides:

"In the case of an electing employee initially appointed on or after the effective date of the election to offer such programs established by the board, no contributions pursuant to . . . this section shall be made by the city until his completion of one year of service and continuance in service thereafter."

It is clear from the statutory scheme that the term "initially appointed" means appointed on an annual basis so as to be eligible for a pension program.[11] Thus an employee must serve for more than one year on an annual salary basis before any rights vest under the optional retirement program.

. The class definition names those who were appointed on or after the fall of 1967, who decided to participate in the optional retirement program, and who did not complete one year of service to CUNY and continue in service there-

---

7. N.Y. Education Law § 6252(4).

8. N.Y. Education Law § 6207(2).

9. N.Y. Education Law § 6253(1)(a).

10. N.Y. Education Law § 6250(5).

11. *See* N.Y. Education Law §§ 6250(3) and (5), 6253(1).

after. In other words, the class is comprised of those whose rights under the optional retirement program did not vest because they were not employed on an annual basis for more than one year.

 Rackow acknowledges that by statutory provision she had to be hired on an annual salary basis to be eligible for the optional program. She claims that she was hired by the Chairman of the Speech Department on an annual basis at an annual salary for the years 1966 to 1969. However, CUNY's records indicate that she was hired for two five month periods in 1966–1967, and for a twelve month period in 1967–1968 at a monthly, rather than an annual, salary basis. Further evidence that Rackow was first hired on an annual salary basis in 1968 is the fact that she was first given a choice of retirement programs in the fall of 1968.[12] A layman would probably not distinguish twelve months of employment on an annual salary basis from twelve months of employment on a monthly basis, but the state courts have recognized the distinction.[13] Here, CUNY made the distinction between twelve months of work at an annual salary and twelve months at a monthly salary to deny employees on a monthly salary pension rights.[14]

Rackow was first appointed on an annual salary basis for the 1968–1969 academic year. She did not remain in service with CUNY for more than a year thereafter as required in order for her rights in the optional retirement program to vest. She is therefore a member of the class.

---

12. *See* N.Y. Education Law § 6253(1).

13. Rosen v. Board of Higher Education, 27 A.D.2d 80, 275 N.Y.S.2d 694 (1st Dep't 1966), aff'd, 19 N.Y.2d 970, 281 N.Y.S.2d 367, 228 N.E.2d 417 (1967); Block v. Tead, 179 Misc. 554, 39 N.Y.S.2d 403 (Sup.Ct. 1943). In *Rosen*, the court upheld the distinction between an annual salaried employee and one working for twelve months at a monthly salary to deny petitioner tenure. *See* Education Law § 6206–b(3).

14. *See* N.Y. Education Law § 6207(2).