Patricia BRAGG, et al., Plaintiffs,

v.

Colonel Dana ROBERTSON,
et al., Defendants.

No. CIV.A. 2:98–0636.

United States District Court,
S.D. West Virginia.
Charleston Division.

Feb. 17, 2000.

Joseph M. Lovett, Mountain State Justice, Charleston, WV, James M. Hecker, Trial Lawyers for Public Justice, Washington, DC, for Patricia Bragg.

Joseph M. Lovett, Mountain State Justice, Charleston, WV, James M. Hecker, Trial Lawyers for Public Justice, Washington, DC, David L. Grubb, John W. Barrett, The Grubb Law Group, Charleston, WV, for James W. Weekley, Sibby R. Weekley.

Patrick C. McGinley, Morgantown, WV, James M. Hecker, Trial Lawyers for Public Justice, Washington, DC, Suzanne M. Weise, Morgantown, WV, for West Virginia Highlands Conservancy, Harry M. Hatfield, Carlos Gore, Linda Gore, Cheryl Price, Jerry Methena.

Michael L. Keller, Assistant U.S. Attorney, Rebecca A. Betts, United States Attorney, Charleston, WV, Lois J. Schiffer, Asst. Atty. Gen., Steven E. Rusak, U.S. Department of Justice, Environment & Nat. Resources Div., Environmental Defense Section, Washington, DC, Ruth Ann Storey, U.S. Department of Justice, Environment & Nat. Resources Div., General Litigation Section, Washington, DC, Terry Clarke, U.S. Army Corps of Engineers, Office of Counsel, Huntington, WV, for Dana Robertson.

Michael L. Keller, Assistant U.S. Attorney, Rebecca A. Betts, United States Attorney, Charleston, WV, Lois J. Schiffer, Asst. Atty. Gen., Steven E. Rusak, U.S. Department of Justice, Environment & Nat. Resources Div., Environmental Defense Section, Washington, DC, Ruth Ann Storey, U.S. Department of Justice, Environment & Nat. Resources Div., General Litigation Section, Washington, DC, for Joe N. Ballard, Michael D. Gheen.

Thomas L. Clarke, William E. Adams, Jr., Craig B. Giffin, West Virginia Division of Environmental Protection, Office of Legal Services, Charleston, WV, Russell M. Hunter, West Virginia Division of Environmental Protection, Office of Mining & Reclamation, Nitro, WV, Benjamin L. Bailey, Brian A. Glasser, Bailey & Glasser, LLP, Charleston, WV, for Michael Miano, Michael C. Castle.

Roger A. Wolfe, Robert G. McLusky, James R. Snyder, Jackson & Kelly, Charleston, WV, for Hobet Mining, Inc., Catenary Coal Co., Mingo-Logan Coal Co.

W. Warren Upton, M. Shane Harvey, Jackson & Kelly, Charleston, WV, Terry R. Sammons, Jackson & Kelly, Charleston, WV, for West Virginia Mining and Reclamation Association, West Virginia Coal Association.

Robert D. Pollitt, Richard L. Lewis, Richard N. Farmer, Steptoe & Johnson, Charleston, WV, W. Henry Lawrence, IV, Steptoe & Johnson, Clarksburg, WV, for Western Pocahontas Properties Limited Partnership, National Council of Coal Lessors, Inc.

Grant Crandall, James M. Haviland, George P. Surmaitis, Crandall, Pyles, Haviland & Turner, Charleston, WV, for International Union, United Mine Workers of America.

### MEMORANDUM OPINION AND ORDER ACCEPTING AND ENTERING CONSENT DECREE

HADEN, Chief Judge.

Pending is the joint motion of Plaintiffs and Defendant Director of the West Virginia Division of Environmental Protection ("WVDEP") to enter a Consent Decree.[1]

---

1. The motion to enter the Consent Decree was originally filed July 26, 1999; however, at that time the WVDEP Director informed the Court he was required to submit the Consent Decree for public comment, pursuant to W. Va.Code § 5–3–2a. Additionally, the Court established its own public comment period ending September 30, 1999. The original

Consent Decree, as proposed, has undergone several modifications, including one pursuant to the Order of December 22, 1999, requesting the parties make pertinent portions of the Decree congruent with the Court's Memorandum Opinion and Order of October 20, 1999 regarding the so-called "buffer zone rule." The Second Joint and Agreed Revision to the

The Consent Decree proposes resolution of *Counts* 4 through 10, 14 and 15 of the Second Amended Complaint, which comprise all remaining claims in this civil action.[2] All Intervenor–Defendants and the Federal Defendants[3] now urge the Court's acceptance of the Consent Decree, *see Bragg v. Robertson,* No. 2:98–636 (S.D.W.Va. Jan. 10, 2000); however, Intervenors have expressed reservations, which are addressed within.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs brought this civil action under the citizen suit provision of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. § 1270(a)(2), alleging the WVDEP Director engaged in an on-going pattern and practice of violating his non-discretionary duties under SMCRA. Following extensive hearings on a proposed surface mining permit for the construction and opening of the Spruce Fork mine, which the Court considered as an instance of the Plaintiffs' pattern and practice claims, the Court enjoined the Federal Defendants from issuing any further permits for that mine, stayed permits issued by the WVDEP Director, and enjoined any preconstruction or mining activities for the Spruce Fork operation until the case was resolved on the merits. *See Bragg v. Robertson,* 54 F.Supp.2d 635 (S.D.W.Va.1999). By Order of June 17, 1999 the Court accepted a settlement agreement which resolved *Counts* 11, 12, and 13 of the Amended Complaint concerning the Federal Defendants, although the Court retained jurisdiction to interpret and enforce the agreement until fully performed. *See Bragg v. Robertson,* 54 F.Supp.2d 653 (S.D.W.Va.1999).

Plaintiffs and the WVDEP Director now proffer the Consent Decree. As previously noted, the WVDEP Director and the Court conducted separate public comment periods. The Court has reviewed all public comments directed to it; the WVDEP Director states his office has reviewed all comments directed to the WVDEP and the Court before moving entry of the Consent Decree. The Court also requested the parties, other than those signatory to the Consent Decree, to file written objections to the Decree, and the Court has reviewed

---

Consent Decree, filed January 3, 2000 is the final version proposed, and it is that to which this Memorandum Opinion and Order refers.

**2.** In a Memorandum Opinion and Order of October 20, 1999, the Court granted summary judgment for Plaintiffs on *Counts* 2 and 3. *See Bragg v. Robertson,* 72 F.Supp.2d 642 (S.D.W.Va.1999).

When permission was granted to amend the initial amended complaint, producing the Second Amended Complaint, *Count* 1, based on the same allegations as *Count* 12, was deleted. *See Bragg v. Robertson,* 54 F.Supp.2d 653, 672 (S.D.W.Va.1999). *Counts* 11, 12, and 13 were also deleted, pursuant to a settlement agreement between Plaintiffs and the Federal Defendants. *Id.*

At the same time, *Counts* 16 and 17 were added, challenging the Army Corps of Engineers' ("Corps'") Clean Water Act Section 404 authorization regarding Hobet's Spruce No. 1 ("Spruce Fork") mine. *Id.* On June 25, 1999 Plaintiffs moved to dismiss voluntarily *Counts* 16 and 17 as moot in light of the Corps' June 24, 1999 decision not to authorize Spruce Fork mining activity under Na-

tionwide Permit 21, and Hobet's withdrawal of its nationwide permit application and subsequent submission of an individual permit application. No party objects to the voluntary dismissal and, accordingly, the Court **GRANTS** Plaintiffs' motion to dismiss *Counts* 16 and 17 of the Second Amended Complaint.

Thus, the Consent Decree settles all claims remaining in this civil action, except it proposes the Court retain jurisdiction over claims relating only to the Spruce Fork mine. Consent Decree ("CD") ¶¶ 4, 5. However, a recent Order by the West Virginia Surface Mine Board that would allow a Spruce Fork surface mining permit only after significant revision, subject both to the Consent Decree and to public notice and comment, makes such continuing jurisdiction unnecessary. *See infra* part II.D.

**3.** The Federal Defendants are Dana Robertson, Colonel, District Engineer; Joe N. Ballard, Lieutenant General, Chief of Engineers and Commander; and Michael D. Gheen, Chief of the Regulatory Branch, Operations and Readiness Division, all of the Corps.

those objections. At the request of the parties, the Court heard testimony from experts working on proposed commercial forestry and approximate original contour ("AOC") spoil placement policy. Finally, on January 7, 2000 the Court conducted a hearing to address issues raised by objectors and question the parties about the Decree. *See Bragg*, No. 2:98–0636 (Jan. 10, 2000). The motion for entry of the Consent Decree is now ripe for review.

## II. DISCUSSION

### A. *Standard of Review*

 A consent decree is a negotiated agreement that is entered as a judgment of the court, *see Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), and thus has attributes of both contracts and judicial decrees, *see United States v. ITT Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). As a negotiated agreement, a consent decree

> normally embodies a compromise: in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus, the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.

*United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971). A consent decree is also a continuing order, one having prospective effect. Where, as here, the parties agree to the Court's continuing jurisdiction to enforce the decree, *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), a party aggrieved by the other's noncompliance may apply for an order to show cause why the noncompliant party should not be held in contempt.

 A district court's "authority to adopt a consent decree comes only from the statute which the decree is intended to enforce," *System Fed'n No. 91, Ry. Emp. Dep't v. Wright*, 364 U.S. 642, 651, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), so that the focus of the court's attention in assessing the agreement should be the purposes the statute is intended to serve, rather than the interests of the parties to the settlement, *see Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C.Cir. 1983). But a trial court approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy. *See id.* In fact, it is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent decrees. Both the parties and the general public benefit from the saving of time and money that results from the voluntary settlement of litigation. *See id.*

 As our Court of Appeals recently affirmed, when considering whether to enter a proposed consent decree, district courts "should be guided by the general principle that settlements are to be encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir.1999). Additionally, as this Court previously recognized, "where a government agency charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement, a reviewing court may appropriately accord substantial weight to the agency's expertise and public interest responsibility." *Bragg*, 54 F.Supp.2d at 660. Nevertheless, a district court should not blindly accept the terms of a proposed settlement, *see Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). Approval of a consent decree is a judicial act, committed to the informed discretion of the trial court, which must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not ille-

gal, a product of collusion, or against the public interest." *North Carolina,* 180 F.3d at 581. With these general considerations in mind, the Court considers the Consent Decree at hand.

### B. Consent Decree Analysis

■ The first enumerated purpose of SMCRA is to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations," 30 U.S.C. § 1202(a), and the fourth is to "assure that surface coal mining operations are so conducted as to protect the environment," 30 U.S.C. § 1202(d). Plaintiffs brought this citizen suit to compel the WVDEP Director to abide by the law and carry out his mandatory duties under SMCRA. In particular, Plaintiffs alleged substantial compliance failures regarding the buffer zone rule, water quality standards, disturbance of wetlands and riparian vegetation, hydrologic reclamation plans, AOC and AOC variance approval, post-mining land uses, coordination with the Environmental Protection Agency objection process, and contemporaneous reclamation.

To satisfy Plaintiffs' allegations, the WVDEP Director agrees in the Consent Decree to enforce state surface mining laws regarding the buffer zone rule,[4] pond placement, hydrologic reclamation plans in permits, AOC variances, and contemporaneous reclamation variances. (CD ¶¶ 6–9, 13.) The Director additionally agrees to create policy documents explaining the application of hydrologic reclamation plans and habitat development. (*Id.* ¶ 9.)

The Director also agrees to propose and submit to the Legislature proposed regulations or statutory provisions allowing commercial forestry and homesteading post-mining land uses for operations receiving AOC variances, (*id.* ¶ 12, 15, 16), and addressing bonding for surface mining operations that receive an AOC variance. (*Id.* ¶ 19). The Director agrees to propose and submit to the Legislature the AOC variance provision found at 30 U.S.C. § 1265(c)(3)(B)(ii), requiring that the post-mining land use be shown to be obtainable according to data regarding expected need and market, (*id.* ¶ 11), and to coordinate review of approved post-mining land uses with state or local economic development authorities before approving future AOC variances. (*Id.* ¶ 18.)

The parties agree to develop a plan to meet AOC requirements and to optimize spoil placement for surface mining valley fills. (*Id.* ¶ 14.) A permitting quality control committee will be created, (*id.* ¶ 20), and two new personnel positions are to be added at WVDEP to oversee implementation of the to-be-adopted AOC and post-mining land use rules and to participate in permit quality control. (*Id.* ¶ 21.) This summary is not intended to be comprehensive or explicit on every proposal of the Consent Decree, but only to suggest the comprehensive scope and depth of the agreement.

Both Plaintiffs and the WVDEP Director characterize the Decree as fair, reasonable and adequate, pointing out that extensive negotiations have been required to produce this agreement. Those negotiations took place after discovery was complete. Having observed the parties and heard their contentions throughout the extensive preliminary injunction hearings and briefing, particularly on the buffer zone issue, the Court knows the process

---

4. *See* W. Va.Code St. R. ("C.S.R.") tit. 38 § 2–5.2 (1999). The parties agree to enforce the buffer zone rule "downstream from the toes of downstream faces of embankments of sediment control structures (including fills in intermittent and perennial streams)." CD ¶¶ 5, 6. The Court's ruling on *Counts* 2 and 3 concerned the footprint of valley fills in these streams, that is, the portion upstream of the toe. The Court found valley fills in intermittent and perennial streams violated the SMCRA buffer zone rule and could not meet state water quality standards. *See Bragg,* 72 F.Supp.2d 642. Essentially, the parties agree to continue litigating that ruling, now under appeal, while the Director agrees to enforce the buffer zone rule downstream.

leading to this agreement was fair and full of adversarial vigor, revealing the strengths and weaknesses of each side's case. Thus "the results come before the court with a much greater assurance of substantive fairness." *United States v. Telluride Co.*, 849 F.Supp. 1400, 1402 (D.Colo.1994) (citations omitted).

Discovery was complete when the Consent Decree was first presented to the Court, a week before this action was set for trial. Since that time, further negotiations have occurred and substantial drafts of the policy documents and proposed statutes and regulations contemplated in the Decree have been produced, finalized, and presented to the West Virginia Legislature. The WVDEP, the agency charged with administration of the law and, presumably the party most knowledgeable about its application, has worked long and hard with Plaintiffs to bring this decree to the Court. "Respect for the agency's role is heightened in a situation where the cards have been dealt face up and a crew of sophisticated players, with sharply conflicting interests, sit at the table." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir.1990). The Court finds and concludes the adversarial process has produced a consent decree that is fair and reasonable.

This settlement proposal addresses virtually point by point Plaintiffs' allegations. The WVDEP Director commits his agency to enforce major portions of the surface mining laws, where lax enforcement was assailed by Plaintiffs; to support strengthening the regulations and statutes governing surface mining in West Virginia; and to add oversight personnel assuring the effectiveness of these changes. Federal surface mining law was enacted to provide social and environmental protections from the adverse effects of surface coal mining. This Consent Decree carries out that program, strengthening the application and oversight of surface mining law in West Virginia. That purpose and program are clearly in the public interest.

By signing this Consent Decree, the Director commits the WVDEP to a state surface coal mining program that will uphold the law according to its spirit and its intent. In the Decree, the Director explicitly promises to enforce surface mining law in areas where Plaintiffs alleged prior enforcement failures caused environmental degradation. The Director urges the Court to accept the Decree and rely on these promises. It is a basic presumption of our system of government that public servants abide by the law and their sworn duty to uphold it. In accepting this Decree the Court relies, as it must, on the Director's acknowledgment of his statutory duties and his promises to carry out these obligations. The public interest would be ill-served by any failure to fulfill this agreement or any falling away from the high standards the Director voluntarily has undertaken and set for WVDEP in signing this Decree to end this litigation. The Court finds and concludes the Consent Decree is in the public interest. The Court retains jurisdiction to ensure, insofar as is judicially possible, that the promises made herein will be fulfilled.

Before approving and entering the Consent Decree, however, the Court considers the concerns expressed by Intervenors.

## C. Intervenors' Concerns and Objections

Early in this litigation, Hobet Mining, Inc., Catenary Coal Company, and Mingo-Logan Coal Company ("Permittees") and the West Virginia Coal Association and West Virginia Mining and Reclamation Association ("Associations") were allowed to intervene. In March 1999 the United Mine Workers of America ("UMWA") were permitted to intervene as well. These parties have participated fully in hearings and briefing on every issue. The Court also has been informed that Intervenors, their lawyers, and technical experts participated fully in drafting proposed policies and rules to effectuate the Consent Decree.

■ As discussed, a consent decree is a method of settling differences to avoid the costs and uncertainties of litigation. The Supreme Court observed,

It has never been supposed that one party—whether an original party, a party that was joined late, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from litigation. Thus, while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.

*Local Number 93,* 478 U.S. at 529, 106 S.Ct. 3063 (citations omitted). By the same token, intervenors are not bound by the agreements of others. *See id.* Nor may a court enter a consent decree that imposes obligations on a party that did not consent to the decree. *See id.*

Intervenor Permittees, Associations, and the UMWA do not question the overall fairness and reasonableness of the Consent Decree, nor do they question whether the Decree is consistent with the public interest. Rather, as the Associations put it, in objections joined by Permittees: WVDEP and Plaintiffs "have not yet resolved all ... issues in a manner agreeable to all of the participants." (Comments and Objections of Associations, 2.) The Court can do no more than note that enigmatic and amorphous complaint.

■ Intervenors' primary concern is that the proposed policies, rules, and statutes, particularly those regarding to AOC, AOC-variance bonding requirements, and post-mining land uses, might bypass statutorily-required rulemaking and legislative processes, becoming law with the Court's entry of the Consent Decree. *See* W. Va.Code §§ 29A–4–2, 22–3–4. The Decree and this Court, however, recognize the realities of rulemaking and lawmaking. Illustratively, the Decree provides "the Director shall *propose and submit*" e.g., revised AOC variance bonding requirements. (CD ¶ 19.) Recognizing legal reality, under the Decree the Director promises to propose, but the Legislature disposes. The Director does not agree, nor could he agree, to create final regulations or statutes. Intervenors particularly object to language specifying the bonding requirements "shall be as follows," and setting out particular bonding requirements, (CD ¶ 19), as requiring a final rule. However, while the *proposal* is mandated by the Director's agreement to end this lawsuit, legislative acceptance cannot be mandated, nor could the Director bind the Legislature to accept his proposals without changes.[5] For this reason, the public should understand that agreements in the Consent Decree to change rules and regulations are proposed modifications only. Good faith efforts by the WVDEP Director and a willing undertaking by the West Virginia Legislature will be required to carry out this WVDEP-approved program.

■ Intervenors also object to the Consent Decree provisions under which the parties will develop an AOC plan to optimize spoil placement and implement the plan as agency policy, (CD ¶ 14), arguing the Court lacks jurisdiction to enforce such non-discretionary duties. While the

5. Similarly, West Virginia cannot independently adopt changes to its approved surface mining regulatory program without prior approval of the Office of Surface Mining ("OSM"). *See State ex rel. West Virginia Highlands Conservancy v. West Virginia Div. of Env'l Protection,* 191 W.Va. 719, 447 S.E.2d 920 (1994). SMCRA and federal regulations require state regulatory authorities to provide OSM prompt notification of all program changes or significant events affecting program implementation, administration, or enforcement. *See* 30 U.S.C. §§ 1253–55, 30 C.F.R. § 732.17(g). OSM provided extensive public comments to the Court and the parties (Comment No. 01588), which resulted in the parties' responsive alteration of the original consent decree. However, nothing in that process or in the Decree itself purports to avoid or end-run this procedural requirement of OSM approval.

dispute a consent decree resolves must be within the court's subject-matter jurisdiction, see *Local Number 93*, 478 U.S. at 525, 106 S.Ct. 3063, not only the law, but also the parties' consent, "animate[ ] the legal force of a consent decree." *Id.* (citations omitted). "Therefore, a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial." *Id.* (citations omitted). The Court does not examine the Decree to determine whether the agreement of the parties affords relief the Court could or would have chosen to award. *See Telluride*, 849 F.Supp. at 1402 ("[The jurist's] role, however, is not to substitute [his] judgment of what constitutes an appropriate settlement or to reform the decree.") Rather, "it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *Local Number 93*, 478 U.S. at 522, 106 S.Ct. 3063.

The Consent Decree, however, is a voluntary agreement by the Director, an exercise of the full range of his discretion and statutory responsibility to administer the state surface coal mining regulation program. Under the Decree, the Director simply agrees to carry out his discretionary duties regarding AOC policy within certain parameters. The Court does not mandate the Director's agreement, but rather stands ready to enforce the agreement at the parties' request.

To the extent Intervenors disagree with the substance of the proposals embodied in the Decree, they are free to participate in the legislative and rulemaking processes. The Court notes, however, that the Associations and the UMWA have joined the motion to enter the Consent Decree. (Comments and Objections of Ass'ns at 1.) Regarding development of the AOC/fill optimization plan, Permittee Hobet told the Court that it "has participated in this lengthy process, applauds the efforts of all

involved and endorses the plan as it now stands[.]" (Permittees' Mem. at 5 (July 29, 1999).) Hobet allows that it "expects that it will participate in the review and preparation of future plans and proposals that are designed to discharge DEP's duties under the Decree" and that it "anticipates supporting these changes as well." *Id.* The Associations assert they "embraced the concepts contained in the original draft Consent Decree and their representatives have spent many hours providing constructive suggestions to the West Virginia [DEP] and the plaintiffs in their ongoing negotiations over draft policies and rules." (Comments and Objections of Ass'ns at 1.)

The Court and the public must rely on this good faith participation by Intervenors and their assertedly sincere support of the Consent Decree. The public interest would be ill-served were Intervenors to repudiate those proposals or deny their own substantial contributions to them before the cock crows thrice.

### D. *Spruce Fork Permit*

 The Consent Decree agrees to dismissal of all Plaintiffs' claims with prejudice, "except as those claims are asserted against the Director's approval of S–5013–97, Hobet's Spruce Mine." (CD ¶ 5.) However, all provisions of the Consent Decree "shall also apply to any *revision* to the Spruce Mine permit." (CD ¶ 22 (emphasis added).)

The Court entertained briefing on the issue of whether it could retain jurisdiction over the Spruce Fork state surface mine permit, under the citizens' suit provision of SMCRA. Behind Plaintiffs' desire that the Court retain jurisdiction over the Spruce Fork permit was disagreement among the parties as to the precise status of the Spruce Fork permit, particularly whether any revisions to the permit would be "significant revisions" so as to prompt public comment and review. *See* 38 C.S.R. § 2–3.28.b.1 (1998). The parties disagreed also whether the Consent Decree would

bind any future Spruce Fork permit process, or portion thereof.

After this final briefing closed, however, on February 3, 2000, the West Virginia Surface Mine Board entered an Agreed Order between Hobet Mining, Inc. and the WVDEP Director providing:

> 1. Hobet shall not conduct any surface mining operations under Permit S–5013–97 or any previously issued revision thereto until such time as it has obtained a revision to that permit from WVDEP which addresses the claims advanced by the plaintiffs in [the *Bragg* civil action].
> 2. Hobet agrees that WVDEP shall, in its review of any revision application that Hobet submits to meet the conditions of paragraph 1, above, require that it be subjected to the public notice, comment and hearing procedures for significant revisions to permits as provided in 38 C.S.R. 2 § 3.28.b.1 (1998).

(Hobet Mining, Inc.'s Resp. to Plfs.' "Notice of Activities," Ex. 5.)

▇▇ Permittees assert this Surface Mine Board action moots the issues requiring the Court's continued jurisdiction over the Spruce Fork surface mine permit. The standard for mootness is a stringent one: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.,* — U.S. —, 120 S.Ct. 693, 708, 145 L.Ed.2d 610 (2000) (citing *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)). The "heavy burden of persua[ding] the court that the challenged conduct cannot be reasonably be expected to start up again lies with the party asserting mootness." *Id.*

Here, the permittee and the permitting agency jointly agree in an Order issued by the administrative review agency that there will be no surface mining under Permit S–5013–97 unless there is first a significant revision to the permit, which is subject to the claims advanced by the Plaintiffs. Therefore, all operable provisions of the Consent Decree will apply to any revised or new Spruce Fork permit application. (CD ¶ 22.) Accordingly, it is no longer necessary to carve out and except the Spruce Fork permit process from the remainder of the Complaint because all claims against that permit are mooted by the Decree, the agreement of Hobet and WVDEP, and the confirmatory Order of the Surface Mine Board.[6]

### III. CONCLUSION

The Court **ORDERS** the Second and Joint Revision to the Consent Decree be incorporated in and **ENTERED** as part of this Memorandum Opinion and Order. Pursuant to Federal Rule of Civil Procedure 41(a)(2) and the parties' agreement,[7] all remaining counts in the Second Amended Complaint are **DISMISSED** with prejudice. The Court retains jurisdiction to enforce the Consent Decree, pursuant to its terms, until all policies and rules required by the Decree have been promulgated or until, with the Court's concurrence, the parties to the Decree jointly inform the Court its oversight is no longer necessary, whichever comes first. The parties shall provide reports to the Court every six (6) months on performance of the Decree. The Preliminary Injunction issued March 3, 1999 is **LIFTED.**

---

6. There is no need to amend the Consent Decree to recognize this point. Paragraph 5, excepting the Spruce Fork permit, is simply overridden by paragraph 22, because now the Spruce Fork permit necessarily will be a revision, covered by the provision that the Consent Decree applies to any revision to the Spruce Fork permit.

7. Once the Court approves the Consent Decree, the Plaintiffs "shall dismiss with prejudice" Counts 4 through 10, 14 and 15. CD ¶ 4. Counts 16 and 17 are also dismissed. *See supra* n. 2.